51 175
148 647

## Shreve *et al.* versus Brereton *et al.*

1. The terms of a contract were to deliver a certain quantity of petroleum in each month for a year at a specified price per gallon; should the seller not keep up the supply, the buyer was to be at liberty to buy any deficiency at market price, and the seller promised to pay the difference. The seller having refused to deliver for several months, the buyer was allowed to recover only the difference between the contract and the market prices at the date of the breaches.

2. In the contract, the parties bound themselves to each other in $10,000, "not as penalty, but as stipulated damages." *Held*, under the circumstances in this case, that this was a penalty; that upon a breach, the amount of damages sustained might be recovered, although it exceeded the sum specified.

3. Where parties bind themselves in a specified sum, "not as penalty, but as stipulated damages," if by the whole agreement it appears that they did not intend the entire sum should be paid for any breach however minute, it must be held as a penalty merely. *Per* Williams, J., of District Court.

4. Where the contract has several stipulations of various degrees of importance, in which damages may be considered liquidated as to some and unliquidated as to the others, and a sum is to be payable on the breach of any of them, it is penalty. *Id.*

5. Where the sum specified will in some instances be too large and in some too small for breaches of the acts provided for, that sum is to be considered a penalty; but where the injury provided against is altogether uncertain, the sum is to be esteemed liquidated damages. *Id.*

ERROR to the District Court of *Allegheny county*.

In the court below this was an action of covenant, by Brereton, Johnson & Wilkins, against Shreve & Tillson, on a contract by which the defendants agreed to deliver to the plaintiffs, at the "Aladdin Oil Words, in bulk or barrels, for one year from" February 1st 1862, one thousand barrels of petroleum per month, at 6½ cents per gallon, " to be measured in the tanks," at the oil works ; payment to be made monthly, in cash and notes of plaintiffs at four months. Defendants " to have the privilege of delivering in advance * * during the spring and summer months not exceeding two thousand barrels, and during the fall and winter months not exceeding three thousand barrels," but not to exceed twelve thousand barrels in the year ; and no more than one thousand barrels to be settled for at the end of any one month. If defendants should

[Shreve *v.* Brereton.]

fail to keep up the supply at the oil works, " in pursuance of their contract," plaintiffs " to be at liberty to buy any deficiency of petroleum at market prices, and to charge any difference in price, freight, &c., to Shreve & Tillson, who agree to pay the same."

" And for the full and faithful performance of all the conditions" of the agreement, the parties bound themselves to each other " in the sum of $10,000, not as a penalty, but as stipulated damages."

Defendants delivered, by the middle of July, five thousand barrels, which were paid for by plaintiffs. On August 19th, defendants wrote to plaintiffs :—

"Dear Sirs :—The water in the river is so low that I fear we will not be able to get down enough oil to make out the 1000 barrels for this month. It is not our fault there not being enough there, for we had a fleet stop there in July, which you could not receive. What we want is this : should we not be able to get the oil down this month, we want to give you 2000 barrels in September, and settle for both August and September on the 1st of October. If this arrangement is satisfactory, please let us *know* immediately. The proceeds of your note have been duly received."

This letter was not answered by plaintiffs, who, November 11th, served the following notice on defendants :—

" You are hereby notified that the supply of petroleum or rock oil has not been kept up at the Aladdin Oil Works, as contracted for in your contract with us, dated the 21st day of January, A. D. 1862, and modified on the 2d day of April, A. D. 1862. That it has become necessary for us to purchase in open market a supply of petroleum for the purpose of carrying on our works, and that we will, in pursuance of the contract aforesaid, purchase whatever oil we may require at the market rate, and charge to you whatever difference there may be in such market rates over your contract price, together with freight, &c.

" In addition to such charges against you, we shall also claim the stipulated damages mentioned in said contract for non-fulfilment of its conditions."

There was no answer from the defendants to this notice, nor did they deliver any more oil to plaintiffs.

The price of oil was considerably below the contract price from March to July, and rose very greatly from September forward. The plaintiffs purchased, from December to April, seven thousand barrels, the deficiency in quantity mentioned in the contract, and charged the defendants the difference between the contract and market prices, amounting to $25,436.53.

As to the readiness of plaintiffs to receive the oil when brought

[Shreve v. Brereton.]

to their landing, to have it measured, &c., there was evidence on both sides, which was conflicting.

The defendants submitted a number of points to the court, which are comprised in the following :—

1. That if the plaintiffs refused to receive the oil tendered by the defendants according to the contract, but suffered it to remain in the boats for a long time, by which the oil was lost or liable to be lost, the defendants were not bound to deliver any more, at least until plaintiffs notified them that they were ready to receive it.

This was affirmed by the court, with the qualification, if such refusals, &c., had not been waived or acquiesced in by the defendants.

2. That the burden was on the plaintiffs to show affirmatively that they were ready and willing to accept the oil when left at the place fixed in the contract, and that there was no evidence of such readiness.

This the court denied.

3. That if the plaintiffs were entitled to recover at all, they could not recover more than $10,000, the sum named in the contract as damages for its breach by either party.

This was reserved for the judgment of the court in banc, and Williams, A. J., further charged :—

"The jury will then determine, 1st, whether the plaintiffs have been guilty of any such breach or breaches of the contract sued on, either in refusing to receive oil tendered by the defendants according to the terms of the contract, or in suffering oil to remain in the defendants' boats and barges an unreasonable length of time before pumping the same into their tanks and measuring it, as would justify the defendants in rescinding the contract, and refusing to deliver any more oil under its provisions ? If the jury find that the plaintiffs were guilty of any such breach or breaches of the contract, they will next inquire and determine whether the defendants waived the said breach or breaches at the time of their happening thereof, or at their subsequent settlements ? If the jury find that the plaintiffs were not guilty of any breach of the contract, or if they were, that the defendants waived any and all such breaches, then the plaintiffs may maintain this action and recover such damages as the evidence shows they have sustained in consequence of the defendants' refusal to deliver the residue of the oil stipulated for in the contract. But if the plaintiffs were guilty of any breach of the contract on their part, and the same was not waived by the defendants, and if the jury shall find in accordance with the instructions of the court, that such breach or breaches of the contract were sufficient to justify the defendants in rescinding the contract and refusing to deliver any more oil, then the plaintiffs will not be entitled to maintain this action

1 P. F. SMITH—12

for the defendants' refusal to deliver the residue of the oil mentioned in the contract.

" 2d. If the plaintiffs were not guilty of any such breach or breaches of the contract as would justify or excuse the defendants' refusal to deliver the residue of the oil contracted for, were they guilty of any failure or refusal to perform their part of the contract by reason of which the defendants suffered or sustained any damage ?   If the jury so find, and such failure or refusal to perform was not waived by the defendants, then they will be entitled to defalk the damages so sustained by them from the damages sustained by the plaintiffs in consequence of the non-delivery of the residue of the oil.

" But if the plaintiffs did not fail to perform the contract on their part, or if their failure was waived by the defendants, then the plaintiffs will be entitled to recover such damages as they have sustained in consequence of the defendants' refusal to deliver the oil.

" The defendants had delivered to the plaintiffs five thousand barrels of oil by the middle of July, and it is admitted and agreed that this was all that they were bound to deliver by the terms of their contract prior to the month of August.   But by the terms of their contract they were bound to deliver one thousand barrels during the month of August, and one thousand barrels during each month thereafter until the whole quantity contracted for should be delivered.   On the 1st of December 1862, when the plaintiffs began to purchase oil and charge the defendants with the difference between the contract and the market price, the deficiency for the four preceding months amounted to four thousand barrels.   The defendants contend that the plaintiffs were not entitled to purchase the whole amount of the deficiency at the market price of oil in December, and charge them with the difference between the contract and the market prices for the whole quantity deficient, but only for the deficiency of the preceding month of November, viz. : one thousand barrels.   It seems to me that they are right in this.   The damages are to be measured and estimated as of the time of the breach, and not as of the date of the purchase after so long a delay.   The evidence shows that the price of oil was advancing rapidly from October to December, when it attained its maximum.   It would not be equitable that the plaintiffs, under such circumstances, should delay from the 1st of September, when they might have begun to purchase the amount of the deficiency for the preceding month, until the 1st of December, and then purchase the whole amount of the deficiency of the four preceding months at the then greatly increased market rates, and charge the defendants with the whole difference. They might purchase the whole quantity then, but they can only recover the difference between the contract and the market price

as of the date of the breaches or within a reasonable time afterwards.

"There is no evidence as to the price of oil in the month of September, and the presumption, in the absence of all evidence as to the price, is that it did not exceed the contract price, and if so, the plaintiffs were not damnified by the failure of the defendants to deliver the one thousand barrels during the month of August, and the jury would not be justified in allowing any damages for the non-delivery of the oil for that month. But there is evidence as to the price of oil in the month of October, and the jury would be justified in allowing the difference between the contract price and the market price in October for the quantity not delivered in September; and so in regard to the oil deliverable during the month of October, the plaintiffs would be entitled to recover the difference between the contract and the market price in November, allowing a reasonable time for making the purchase. The defendants do not deny that if they are liable for the non-delivery of the oil, they would be chargeable with the difference between the contract price and the market price in December for the oil deliverable during the month of November. There is no question as to the plaintiffs' right to recover the difference between the contract and the market price of the oil purchased after the 1st of January 1863, if the jury find that the plaintiffs are entitled to maintain this action for its non-delivery."

The jury found for the plaintiff, $25,308, subject to the question of law reserved. Judgment was afterwards entered upon the verdict, Judge Williams delivering the following opinion:—

"Is the sum in which the parties bound themselves, for the full and faithful performance of the agreement in this case, to be treated as a penalty or as liquidated damages? This is entirely a question of construction, to be determined by the intention of the parties and the meaning of the words they have used. Though the parties have declared themselves to be bound in the sum specified in the agreement, 'not as a penalty but as stipulated damages,' yet, if the whole agreement taken together shows that they did not intend that the entire sum should be paid for the breach of any of its stipulations, however minute and unimportant, it must be held to be a penalty merely, and not stipulated damages. But before we examine its provisions in order to ascertain the intention and meaning of the parties, it will be proper to advert to the principles which govern the construction of such agreements. The question raised here is not a new one; it has frequently been considered and decided both by the English and the American courts. And though there is some inconsistency and conflict in the decisions, it seems to me that the follow-

ing principles must now be regarded as established and settled by the weight of authority.

"Where the contract contains several stipulations of various degrees of importance, as to some of which the damages might be considered liquidated, whilst for others they might be deemed unliquidated, and a sum of money is made payable upon a breach of any of them, it is to be adjudged a penalty and not liquidated damages: Green *v.* Price, 13 M. & W. 700; or, as the principle is elsewhere more fully expressed, where the covenant is for the performance or omission of various acts, which are not measurable by any exact pecuniary standard, together with one or more acts in respect of which the damages on a breach of the covenant are certain or readily ascertainable by a jury, and there is a sum stipulated as damages to be paid by each party to the other for a breach of any one of the covenants, such sum is held to be a penalty merely, and not stipulated damages: Bagley *v.* Peddie, 5 Sandf. 192.

" So where the sum which is to be a security for the performance of an agreement to do several acts, will, in case of breaches of the agreement, be in some instances too large, and in others too small a compensation for the injury thereby occasioned, that sum is to be considered a penalty: Davies *v.* Penton, 6 B. & Cr. 216.

" But where the injury provided against is altogether uncertain, the sum specified is to be taken as liquidated damages: Galsworthy *v.* Strutt, 1 Ex. Rep. 667; in other words, where the covenant is for the performance of a single act, or several acts, or for the abstaining of doing some particular act or acts, which are not measurable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any such covenants, that sum is to be deemed liquidated damages, and not a penalty: Bagley *v.* Peddie.

" The distinction between those agreements where the damages are to be considered as liquidated, and those in which they are to be regarded merely as a penalty, and the principles indicating the distinction, are also discussed and recognised in the following cases, among others which might be cited: Kemble *v.* Farren, 6 Bing. 141; Horner *v.* Flintoff, 9 M. & W. 680; Atkyns *v.* Kinnear, 4 Ex. Rep. 783; Reynolds *v.* Bridge, 37 Eng. L. & Eq. 128; Williams *v.* Dakin, 22 Wend. 201; Beal *v.* Hays, 5 Sandf. 640; and Laufman *v.* Cochran, 2 Smith 275.

" These principles, applied to the construction of the agreement in this case, lead to but one conclusion. The damages for the breach of any of its stipulations are certain or readily ascertainable by a jury, and the sum specified as security for the performance of the agreement must, therefore, be regarded as a penalty

[Shreve v. Brereton.]

and not as liquidated damages. Besides, any other construction would contravene one of the express provisions of the agreement. The defendants covenanted that, should they fail to keep up the supply of oil at the Aladdin Works in pursuance of their contract, the plaintiffs should be at liberty to buy any deficiency at market prices and charge any difference in price, freight, &c., to the defendants, who expressly agreed to pay the same. They are, therefore, bound by the express stipulations of their contract to pay the full amount of the damage assessed by the jury.

"Let judgment be entered in favour of the plaintiffs against the defendants on the verdict for the damages assessed by the jury, with interest thereon from the date thereof."

The defendants excepted to the charge of the court, and assigned the same and the entering judgment on the verdict, for error.

*Hamilton & Acheson*, for plaintiff in error.—The acquiescence of defendants may have amounted to a waiver of their right to rescind the contract, but not of notice of plaintiffs' subsequent readiness to receive the oil.

The neglect of plaintiffs to buy oil in the market for three or four months after defendants ceased to deliver in July, and not answering defendants' letter, justified defendants in treating the contract as abandoned: 2 Pars. on Contracts 191.

The averment in the declaration that the plaintiffs were ready and willing to receive the goods must be proved: Robinson v. Tyson, 10 Wright 286. The more so in this case, because the readiness of plaintiffs to receive was traversed by a special plea. If the notice of November 11th showed a readiness to receive the oil *then*, it did not tend to show readiness in previous months. As to the computation of damages. There was no evidence of the price of oil in September, nor of its rise until October 9th. This was too late for plaintiffs to buy for September. The damages could not exceed the difference between the contract and market price on September 30th, to which day defendants had to make the monthly delivery. The price on that day should have regulated the verdict: Leigh v. Patterson, 8 Taunt. 540; Sedgwick on Measure of Damages 262–3; and therefore for September plaintiffs received no damage.

Is the sum mentioned in contract, penalty or liquidated damages? The words are explicit and precise, both affirmatively and negatively. This question is always to be determined with reference to the language and subject-matter of the agreement: Curry v. Larer, 7 Barr 470; Tarnton v. Ferguson, 7 C. B. 716; Chamberlain v. Barley, 11 N. H. 234–240.

"Stipulated damages" are the parties' own words, and the court cannot make a new contract for a man: Lowe v. Peers, 4 Burr. 2225; Galsworthy v. Strutt, 1 Wels., H. & G.; 1 Exch. 665. When

[Shreve *v.* Brereton.]

there are several stipulations of various degrees of importance, as to some of which the damages may be considered liquidated, as to others not, the sum mentioned is a penalty. When the damages are altogether uncertain, and a sum expressly made payable in respect to it, as stipulated damages, they will be so construed: Green *v.* Price, 13 M. & W. 700; Kemble *v.* Farren, 6 Bing. 141; Boys *v.* Ancell, 5 Id. (N. C.) 330.

The covenant here refers only to delivery of oil and payment of the difference between contract and market prices; and the clause in relation to damages refers to *all* the conditions. The damages to either party could not be foretold; hence a liquidated sum was fixed. Atkins *v.* Kennier, 4 Wels., H. & G. 776, Beall *v.* Hays, 5 Sandf. 640, and Bagley *v.* Peddie, Id. 192, were on different circumstances from this case. The clause was inserted for some purpose, and the court is bound to give effect to it. If not to *fix* the amount of damages, it may operate as a *limitation* beyond which the parties cannot go: Wilbeam *v.* Ashton, 1 Campbell 78; Galsworthy *v.* Strutt, sup., p. 662.

*James A. & W. H. Lowrie,* for defendants in error.—If the provision is only a penalty, then the authorities are clear and uniform, that the plaintiff has his choice *either* to sue in debt on the penalty and recover any damages he may have suffered, not exceeding the penalty, *or* to declare in covenant, and recover all his damages, even though they may exceed the penalty. The following authorities are enough to prove this: Graham *v.* Bickham, 4 Dall. 149; Harrison *v.* Wright, 13 East 343; Lowe *v.* Pears, 4 Burr. 2228; Ayres *v.* Pease, 12 Wend. 393; Maylam *v.* Norris, 1 Com. B. 244 (50 E. C. L.); Haggart *v.* Morgan, 1 Seld. 422; Winter *v.* Trimmer, 1 Blackstone R. 395; Cottrel *v.* Hooke, 1 Doug. 93; Martin *v.* Taylor, 1 Wash. C. C. R. 1; Hurst *v.* Hurst, 4 Exch. R. 579; Icely *v.* Grew, 6 Nev. & M. 467 (36 E. C. L. 439); Mayne on Damages 64; Sedgwick on Damages, 3d ed. 424, 443–447 (424–426).

If the strict construction would work absurdity or oppression, the use of term liquidated damages will not prevent the court from inquiring into actual damage: Sedgwick on Damages 420; Mayne on Damages 66. Parties cannot liquidate damages so as to avoid the usury laws: Chiddick *v.* Marsh, 1 New Jer. 463. If doubtful, the sum will be construed penalty: 24 Verm. 97; 16 Ill. 475; Sedgwick 441.

Where independently of the stipulation, damages would be uncertain and very difficult of ascertainment, the damages will be considered liquidated if so called.

The cases which come under this last class are those where the damages are stipulated for violation of contracts, by a tenant ploughing up pasture ground, 3 Barn. & Ald. 692; by refusing

[Shreve *v.* Brereton.]

to marry, Lowe *v.* Pears, 4 Burr. 2228; by carrying on a particular business within bounds agreed upon, on the sale of the good-will to another, 4 Exch. R. 776, Id. 657, 13 M. & W. 695, 16 Id. 346, 14 Id. 187, 8 Mass. 223, 4 Wend. 468, 1 Zabriskie 463, 17 Wend. 447, 22 Id. 201, 3 Car. & P. 240 (14 E. C. L. 286); by refusing to assign a lease and deliver possession of land on a given day, 13 Wend. 587, Sedgwick on Damages, 3d ed., 423–436.

Here there is no uncertainty: damages are ascertainable by the ordinary standard.  The rule means where there is no ordinary standard which can be applied by ordinary judicial skill, or skill of the business to which the case belongs.

A contract to pay a certain sum or return a lease in a given time, is a penal obligation: Burrage *v.* Crump, 3 Jones Law R. (N. C.) 330.

In the following cases stipulated damages have been set aside in favour of the rule of legal compensation: Kemble *v.* Farren, 6 Bing. 141; Davis *v.* Penton, 6 Barn. & C. 200; Homer *v.* Flintoff, 9 M. & W. 678; Beckham *v.* Drake, 8 Id. 846; Galsworthy *v.* Strutt, 1 Exch. 568; Williams *v.* Dakin, 22 Wend. 201; 13 Barb. 106; 12 Id. 366; 24 Vt. 97; Heard *v.* Bowers, 23 Pick. 455; Shute *v.* Taylor, 5 Met. 61: Hoag *v.* McGinnis, 22 Wend. 163; Carpenter *v.* Lockhart, 1 Smith (Ind.) 326; Bayse *v.* Ambrose, 7 Jones (Mo.) 39; Watts *v.* Shepherd, 2 Alab. 425; Owens *v.* Hodges, 1 McMillan (S. C.) 106; Bagley *v.* Peddie, 5 Sandf. 192; 11 Texas 273; 14 Barb. (Ark.) 315; 37 Eng. L. & Eq. 122; 2 Abbott Pr. R. 449; Sedgwick on Damages, 3d ed. 440 (421); Beall *v.* Hays, 5 Sandf. 640; 3 Ohio St. R. 241; Sedgwick 429 (410); Edwards *v.* Williams, 5 Taunt. 247; Boys *v.* Ancell, 5 Bing. N. C. 390.

Suing for liquidated damages is a rescission in other respects; suing on the covenant affirms it.  Otherwise a party might commit a small breach, pay the penalty and insist upon the other party performing or paying some penalty, and thus the means of securing performance would dissolve the contract: 1 W. Black. 387–395; 13 East 343; 4 Burr. 2228; 4 Exch. 579; 1 Com. B. 240, 251; Mayne on Damages 64.

The opinion of the court was delivered, January 8th 1866, by

READ, J.—This is an action of covenant, to recover damages for the breach of a contract by the defendants, to deliver twelve thousand barrels of petroleum or rock oil of certain specific gravity, in monthly instalments of one thousand barrels each, to the plaintiffs, at the landing of the Aladdin Oil Works, in bulk or in barrels.  The price was six and a half cents per gallon delivered as aforesaid, and to be measured in the tanks at said works; and settlements were to be made at the end of every month for one

[Shreve *v.* Brereton.]

thousand barrels, provided that quantity had been delivered during the month, when $500 was to be paid in cash by plaintiffs and the residue in their note at four months. The defendants had the privilege of delivering in advance during the spring and summer months, not exceeding two thousand barrels, and during the fall and winter months, not exceeding three thousand barrels, but only one thousand barrels to be settled for at the end of any one month.

If the defendants did not keep up the supply the plaintiffs were at liberty to buy any deficiency of oil at market prices, and to charge the difference in price, freight, &c., to defendants, who agreed to pay the same. On the 13th August 1862, the oil for the month of July and two boats was settled and paid for by the plaintiffs.

On the 19th of August, six days afterwards, the defendants wrote to plaintiffs complaining of the lowness of the water, and fearing they could not get down enough to make out the one thousand barrels for the month. " What we want is this, should we not be able to get oil down this month, we want to give you two thousand barrels in September, and settle for both August and September, on the 1st of October. If this arrangement is satisfactory please let us know immediately. The proceeds of your note have been duly received."

The price of oil ranged during the summer from three to four cents, and even as low as two and a half cents per gallon, but in September it began to rise and rose greatly in October and November. No oil was delivered after the settlement for the month of July above stated, and on the 11th November the plaintiffs had a notice served on the defendants, informing them, that unless they kept up the plaintiffs' supply, the plaintiffs would purchase in the market, and charge them with the difference of price. To this there was no answer, and they afterwards purchased oil to supply all the arrears of the defendants.

Judge Williams, in a very able charge, submitted the case under proper instructions to the jury. He first submitted the question whether the plaintiffs had committed such breaches of the contract, as would justify the defendants in rescinding the contract, and if they found they had, then whether the defendants had waived them. · If the plaintiffs were guilty of any such breach and it was not waived by defendants, then the plaintiffs could not recover.

If the breach did not justify a rescission, or refusal to deliver the residue of the oil, and was not waived by the defendants, then they would be entitled to ·defalk the damages sustained by them from the damages sustained by the plaintiffs for the non-delivery of the residue of the oil.

But if the plaintiffs did not fail to perform the contract on their part, or if their failure was waived by the defendants, then the

[Shreve v. Brereton.]

plaintiffs will be entitled to recover such damages as they have sustained in consequence of the defendants' refusal to deliver the oil.

The plaintiffs purchased the residue in the open market, but they were only allowed to recover the difference in price at the periods when the oil should have been delivered, or, as expressed by the learned judge, "they can only recover the difference between the contract and the market price, as of the date of the breaches, or within a reasonable time afterward."

We have read carefully the judge's charge, to which we refer as a most complete exposition of the whole case, and we see nothing in the first seven specifications of error.

This brings us to the eighth specification, which raises the question, whether the $10,000 in the contract is a penalty, or liquidated damages. If it be liquidated damages, then the plaintiffs have by the defendant's refusal to deliver the residue of the oil sustained more than $15,000 damages, which are not reached or covered by the sum so fixed in the contract.

Upon this question the cases in our state are few, and afford us very little aid in a case like the present. They are Graham v. Bickham, 4 Dall. 149, decided nearly seventy years ago; Robeson v. Whitesides, 16 S. & R. 320; Curry v. Larer, 7 Barr 470; Burr v. Todd, 5 Wright 206; and Streeper v. Williams, 12 Wright 250. In all but the last case the sums named were considered penalties. "The general leaning," says Judge Coulter, "however, is that such agreements shall be considered as penalties, so that a party shall recover such damages only as he shows that in justice and fairness he ought to recover. The general rule of law is, that the remedy shall be commensurate with the injury sustained. A scrutiny of the American cases leaves every agreement of the kind pretty much at large to stand on its own peculiarities."

The classes into which judges and text-writers have arranged the cases in which the sum has been treated as a penalty, do not seem to be strictly applicable to a case like the present. But Mr. Greenleaf, in his excellent Treatise on Evidence, vol. ii. § 459, in giving two of the rules for inferring that the parties intended the sum as liquidated damages, furnishes principles by which this case is governed. "1. Where the damages are *uncertain*, and are not capable of being ascertained by any satisfactory and known rule, whether the *uncertainty* lies in the nature of the subject itself, or in the particular circumstances of the case. 2. Where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of *actual* and fair *calculation* and *adjustment* between the parties."

Now, it is clear that neither of these rules, nor the examples given, include the case before us, for the damages can be reduced

[Shreve *v.* Brereton.]

to as nearly a perfect certainty as the calculation of interest, and it was impossible in the fluctuation in prices in the course of a year, that the damages could have been the subject of actual and fair calculation and adjustment. So Mr. W. Pitt Taylor, in his Treatise on Evidence, vol. i. p. 56, says:—" So the question whether the sum mentioned in an agreement to be paid for a breach, is to be treated as a penalty, or as liquidated damages, is one of law to be decided by the judge, *upon a consideration of the whole instrument.*" In Sainter *v.* Ferguson, 7 Com. Bench 730, Mr. Justice Cresswell said : " If there be only one event, upon which the money was to become payable, and there is no adequate means of ascertaining the precise damage that may result to the plaintiff, from a breach of the contract, it is perfectly competent to the parties to fix a given amount of compensation in order to avoid the difficulty ;" and Mr. Justice Williams said : " I agree with the rest of the court, that it is competent to the parties by mutual agreement to settle the amount of damages that are in their nature uncertain and difficult of estimation, where they depend upon the failure to perform a single act."

There is in this agreement a stipulation entirely incompatible with the idea that the sum named was liquidated damages, for whenever there was a failure to supply, the plaintiff could go into the market and buy and charge the difference, and there is not a word to show that they must stop purchasing when the differences reach the $10,000, and then the contract is at an end, although there may be three or more deliveries to be made ; on the other hand, if all the deliveries were made but the last one thousand barrels, it would be most unreasonable to exact the whole amount when the whole damage might only be a fourth or some other portion of the sum fixed.

The damages in this case were ascertained without difficulty, there being no conflicting evidence, and the market is so large, and the prices so well known, that there was no trouble of that kind. For these reasons, and for those assigned by the learned judge, we are of opinion the eighth specification of error is not sustained.

As long as it was profitable, the defendants made their monthly deliveries ; but when the market price rose to and above the contract price, they then ceased altogether, and gave no explanation of their conduct. The verdict and judgment are right.

Judgment affirmed.