## York v. York Railways Company, Appellant.

*Street railways—Bond—Municipal corporations—Liquidated damages—Penalty—Noncompletion of road—Delay—Burden of proof—Estoppel.*

1. The question whether the amount stated in a conditional bond or contract is to be taken as a penalty or a liquidation of damages arising from breach of the condition, is to be determined by the in-

tention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its surroundings, and in this examination it is necessary to consider the relation which the sum bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages and such other matters as are legally or necessarily inherent in the transaction.

2. The whole sum named to stand as security generally may by express contractual stipulation be made collectible as liquidated damages for a particular designated breach provided the damages flowing from such breach would obviously be impossible or most difficult to ascertain by reference to any exact pecuniary standard of measurement.

3. Where a street railroad company agrees, in accordance with the terms of a city ordinance, to commence the construction of a street railway by a certain date and to complete and operate same as an entirety upon all the streets named in the ordinance within a stipulated time, and furnishes a bond for $25,000, conditioned to comply with the ordinance and to indemnify the city from loss or damage arising from breach, and agreeing "that the said bond shall become forfeited to and collectible by the city as assessed and liquidated damages due and owing said city in event of failure of the company to complete and operate its line of railway within the time stated; for which bond, after the company shall have completed and begun to operate its railway line shall be substituted the bond of the company in the sum of $5,000," the city is entitled to collect $25,000 on the bond, as liquidated damages in case of failure to complete and operate the railway within the stipulated time.

4. In such case, if the railway company desires to plead an excuse for its failure to complete and operate its line within the time limit, the burden is upon it to show that the matter relied upon actually caused or contributed to its failure. A temporary delay, from no matter what source, would not serve to relieve the company from its contractual obligations, if, as a matter of fact, it did not cause or contribute to the ultimate failure to comply with the ordinance.

5. In such case, the fact that the city stood by and saw work done on the line after the expiration of the time limit, required the company to expend money in paving a street, and accepted a percentage of the gross earnings on the tracks laid as stipulated in the ordinance, does not estop the city from collecting the amount stipulated as liquidated damages for default in not completing and operating the line on time, there being nothing upon the record to show that the city claimed a forfeiture of the franchise or raised any question as to the right of the company to use the part of the line that it had completed and was paying the percentage upon.

Argued May 23, 1910. Appeal, No. 144, Jan. T., 1910, by defendant, from judgment of C. P. York Co., Aug. Term, 1909, No. 156, on verdict for plaintiff in case of City of York v. York Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a bond. Before BITTENGER, P. J.
The facts appear in the opinion of the Supreme Court.

*Errors assigned* among others were (2) rejection of evidence of quo warranto proceedings instituted by attorney general; (4) rejection of evidence that city authorities compelled defendant to take up a curve and remove certain tracks; (5) rejection of evidence of notice and direction to pave streets actually occupied; (6) rejection of evidence that city demanded and accepted three per cent of gross earnings of line actually in operation; (7) in directing a verdict for plaintiff.

*W. F. Bay Stewart* and *John G. Johnson*, with them *John A. Hoober* and *George S. Schmidt*, for appellant.— Where the agreement contains several matters of different degrees of importance and yet the sum named is payable for the breach of any, even the least, it is to be construed as a penalty and not as liquidated damages: Steeper v. Williams, 48 Pa. 450; Shreve v. Brereton, 51 Pa. 175; March v. Allabough, 103 Pa. 335; Keck v. Bieber, 148 Pa. 645; Stafford v. Walker, 12 S. & R. 190; Lehigh Coal & Nav. Co. v. Early, 162 Pa. 338.

*J. S. Black*, with him *V. K. Keesey* and *John L. Rouse*, for appellee.—It will be inferred that parties intended a sum agreed to be paid upon breach of a contract as liquidated damages whenever the damages are uncertain and not capable of being ascertained by any satisfactory rule: Malone v. Phila., 147 Pa. 416; Emery v. Boyle, 200 Pa. 249.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1910:

This action was brought by the city of York against the York Railways Company, successor to the Colonial Street Railway Company, and the Fidelity & Deposit Company of Maryland, to recover $25,000 liquidated damages, under a contract evidenced by an ordinance of councils granting a franchise to construct and operate a railway upon certain of the highways and bridges of the city of York, an acceptance of the ordinance, and a bond given under its provisions with the last-named defendant as surety. The court below instructed a verdict in favor of the plaintiff for the full amount of the bond with interest, and the defendants have appealed.

The ordinance was passed finally by councils March 2, 1906, approved by the mayor March 20, 1906, accepted by the railway company March 27, 1906, the bond given and accepted on March 30, 1906, and work commenced April 1, 1906. The breach relied upon was the failure to complete and put the whole line in actual operation within three years from the last date as required by the terms of the ordinance.

The only sections of the ordinance essential to our present consideration are the ninth and thirteenth, and the material parts of these are: "Sec. 9. The company in good faith shall commence the construction of its line prior to April 1, 1906, and shall complete the construction of its line upon all the streets and between all the points above mentioned and put same in actual operation within three years from said date and on its failure so to commence, or having commenced, on its failure to complete its line, its right to occupy the portion of any street or streets on which its line shall not have been completed at the time fixed for the completion of the same, shall terminate and end, except as hereinafter provided, unless the completion of the construction of its said line of railway at the existing City grades for said streets, avenues, bridges or highways at the time of the construction shall be delayed or rendered impossible by proceedings

either at law or in equity to invalidate its charter or to prevent the construction or completion of its line of railway upon the streets, avenues, bridges and highways, or any of them, mentioned in section 1 hereof . . . ." and "Sec. 13. The Colonial Street Railway Company, . . . . shall . . . . accept all the obligations, conditions and duties by this ordinance imposed upon said company . . . . the certificate (of acceptance) and this ordinance to constitute a contract, between the said Colonial Street Railway Company and the City of York. Said Company shall also at the same time of filing said certificate furnish a bond in the sum of Twenty-five thousand dollars . . . . conditioned to faithfully comply with all the provisions of this ordinance and to indemnify the City of York of and from all loss and damage accruing to it in any way by reason of the passage of this ordinance, . . . . the said Company, its successors and assigns, also agrees that the said bond shall become forfeited to and collectible by the City of York as assessed and liquidated damages due and owing said city in the event of the failure of said Company, its successors and assigns, to complete and operate its line of railway as set forth in section 9 hereof; for which bond, after the Company shall have completed and begun to operate its railway line, shall be substituted the bond of the company in the sum of $5,000. . . ."

The condition of the bond is: "If the above bounden, the Colonial Street Railway Company, shall faithfully comply with all the provisions of a certain ordinance . . . . entitled 'An Ordinance granting to the Colonial Street Railway Company, its successors and assigns, the right to' construct, operate and maintain its line or lines of street railway over, and along certain streets, bridges, avenues and highways in the City of York, under certain conditions and restrictions,' approved by the mayor of the said City of York on March 20, 1906, and shall indemnify the City of York of and from all loss and damage accruing to it in any way by reason of the passage of the above-recited ordinance, then this obligation to be

void; otherwise to be and remain in full force and virtue."

The defendants contend that the court below erred in treating the sum of the bond as liquidated damages. They argue (a) the presumption to be that a lump sum named by the parties to a contract is a penalty rather than liquidated damages; and (b) where an agreement contains several matters of different degrees of importance and yet the sum named is payable for the breach of any, even the least, it is to be construed as a penalty and not as liquidated damages. Neither of these principles governs the present case.

(a) "The question whether the amount stated in a conditional bond or contract is to be taken as a penalty or a liquidation of damages arising from a breach of the condition, is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter, and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction:" March v. Allabough, 103 Pa. 335. "The difficulty of measuring the damages which would result from a breach of contract is always an important element, even a controlling one, in determining whether the intention of the parties was to fix a sum certain as the just amount to be recovered instead of leaving the question to the uncertain estimate of the jury. Generally where the covenant is for the performance or non-performance of a single act or of several acts, damages for the breach of which cannot be measured by any fixed standard, the sum named if reasonable in amount will be considered as liquidated damages:" Emery v. Boyle, 200 Pa. 249. "It is competent for the parties by mutual agreement to settle the amount of the damages that are in their nature uncertain

and difficult of estimation, where they depend upon the failure to perform a single act:" Shreve v. Brereton, 51 Pa. 175. Here the action was to recover on the single ground that the appellant railway company had failed to complete and operate its line within the time required by the ordinance. That the completion and operation of the line within the limited period was the most important thing that the parties had in mind is made apparent by the agreement that after such completion the city was to accept a bond of $5,000 in substitution for the bond of $25,000. That the last-named sum was intended as liquidated damages to cover the loss which the city would sustain in the event of the company's failure to complete and operate its line within the stipulated time is made plain by the words of the ordinance: "The said company, its successors and assigns, also agrees that said bond shall become forfeited to and collectible by the city of York as assessed and liquidated damages due and owing said city in the event of the failure of said company, its successors and assigns, to complete and operate its line of railway. . . ." This was the only breach for which the ordinance provided that the sum named in the bond should be considered as liquidated damages, and clearly it was one where the difficulty of measuring the damages would be insurmountable; such is always the case where the object is to give compensation for public inconvenience: Malone v. Phila., 147 Pa. 416.

(b) Although the second principle relied upon by the defendants has met with recognition in Pennsylvania (March v. Allabough, supra), there is nothing in it which forbids an express contractual stipulation that the whole sum named to stand as security generally, shall be collectible as liquidated damages for a particular, designated breach; provided the contemplated breach is of such a nature that the damages flowing from it would obviously be impossible or most difficult to ascertain by reference to any exact pecuniary standard of measurement, as in the present case.

The defendants further contend that notwithstanding the fact that the holder of the franchise "did not complete the construction of its line upon all the streets and between all the points" mentioned in the ordinance "or put same in actual operation within three years," the plaintiff was not in a position to insist upon a strict compliance with the requirements of the ordinance in these respects: (1) because quo warranto proceedings were instituted against the franchise holder by the Attorney General; (2) because the plaintiff itself hindered and delayed the construction of the line; (3) because the plaintiff is estopped from claiming under the bond by reason of standing by and seeing work done on the line, notifying the railroad company to expend money in paving a certain street, and demanding and receiving a percentage on the gross earnings of the company after the expiration of the three-year limit.

1. The quo warranto proceedings had been instituted at least one day prior to the approval of the ordinance by the mayor and eight days prior to its acceptance by the railway company, and the work on the line was commenced after their inception; hence it cannot with any show of reason be contended that the contracting parties considered the mere pendency of these proceedings as delaying or rendering impossible the completion of the line as required by the ordinance. They were instituted March 19, 1906, and withdrawn October 8, 1906, and there was no proper offer to show that there had been any actual stoppage of the work by reason of their pendency during this short period. If the railway company desired to plead an excuse for its failure to complete and operate its line within the time limit, the burden was upon it to show that the matter relied upon actually caused or contributed to its failure. A temporary delay, from no matter what source, would not serve to relieve the company from its contractual obligations, if as a matter of fact it did not cause or contribute to the ultimate failure to comply with the or-

dinance, and whether it did or not was peculiarly within the knowledge of the defendant company.

2. Counsel for the defendant railway offered to show that in December, 1907, the mayor and highway committee of the city of York compelled it to take up a curve connecting a line which it had constructed on West King street with a line on Richland avenue, and ordered it to remove its track from the former street, "this for the purpose of showing that the plaintiff itself hindered, delayed, and prevented the defendant from constructing its line of railway in accordance with the terms of the ordinance." The overruling of this offer is assigned for error. We find no express provision in the ordinance for a curve to connect the lines in question, so it is not clear how any action of the city in relation to that curve could be viewed as a prevention or delay of the work of construction required by the ordinance. However, if the company had the right to lay the curve, neither the mayor nor the highway committee could change the terms of the ordinance, and the mere receipt by the company of a direction from them to do a thing contrary to the terms of the ordinance would not justify any delay on its part in the work of construction; and, again, there is nothing in the offer to show that the delay caused by taking up the curve was more than temporary. As to the notice to remove the track on King street, there is nothing in the offer to prove that the company was required to or ever did take it up; the offer was merely to show that the company was directed so to do. We see no merit in this assignment.

3. The defendant company constructed a double track line on one of the streets covered by the ordinance in May, 1909, and it offered to show that under the direction of the highway committee of the city it had paved this street at an expense of $1,000, and that in June, 1909, it paid to the city three per cent of the gross earnings made upon this piece of track, "for the purpose of showing that the city is estopped by both of these facts

from claiming a forfeiture of the ordinance or a recovery in this suit." The trial judge disallowed the offer, but for our present purposes we will treat the matter as though the testimony had been received. The appellants argue that the city stood by and saw work done on the line after the expiration of the three years, required the company to expend money in paving a street, and accepted the percentage stipulated for in the ordinance; therefore it is estopped from a recovery in this suit. This line of reasoning is difficult to understand. The ordinance provides that each year from its date the company shall pay to the city three per centum of its entire gross receipts in full satisfaction of all license taxes, pole taxes, taxes on cars, and other financial returns. We find nothing upon the record to show that the city claimed a forfeiture of the franchise or raised any question as to the right of the company to use the part of the line that it had completed and was paying the percentage upon. The question tried was not whether the company had forfeited any right or privilege given to it by the contract with the city, but simply whether or not its failure to complete its whole line within the three years entitled the city to collect the amount stipulated as liquidated damages for that particular default. The appellant agreed to construct its railway as an entirety upon all the streets named in the ordinance and to put it in operation within a stipulated time, or to pay $25,000 liquidated damages in case of failure so to do. The evidence shows that it has constructed but a small part of the line, and there is nothing upon the record to show an effort or even an intention to complete the rest. Under these circumstances the damages were properly due and recoverable.

While we do not agree in every instance with the reasons given by the trial judge in making his rulings upon the evidence, we fail to find any reversible error upon the record. The assignments of error are all overruled and the judgment is affirmed.