## Power Manufacturing Company v. Bellefonte Trust Company, Administrator, et al.

*J. K. Johnston* (with him *Philip H. Johnston*), for plaintiff.
*J. C. Furst* and *W. D. Zerby*, for defendants.

FLEMING, P. J., July 16, 1929.—This matter is before the court on an affidavit of defense raising questions of law. The rule for judgment entered by the plaintiff seeks the entry of judgment in favor of the plaintiff and against the defendant for want of a sufficient affidavit of defense. This is contrary to the purposes of section 20 of the Practice Act of May 14, 1915, P. L. 483, unless it be shown to the satisfaction of the court that a decision on the

questions of law involved disposes of the whole or any part of the claim, which in this case it does not. In the event of a decision against the defendants, the act specifically accords them a right to file a supplemental affidavit of defense to the averments of fact of the statement within fifteen days: Hannock *v.* Tope and Tope, 77 Pa. Superior Ct. 101. If the questions of law raised are to be decided in favor of the defendants and against the plaintiff, without prejudice, a new suit may be brought: White *v.* Aka, No. 2, 2 D. & C. 678. The Practice Act, however, leaves the right to amend the statement of claim after demurrer has been sustained to the discretion of the court: Levine *v.* Pittsburgh State Bank, 281 Pa. 477.

W. I. Miller and M. J. Miller were brothers and copartners, engaged in the lime business, under the firm name of "Valley View Lime Kilns." On Nov. 14, 1927, such partnership, through W. I. Miller, now deceased, entered into a written contract with plaintiff for the purchase of one Primm Oil Engine with fixtures and pipe for the sum of $2475. By the terms of the contract, the acceptance of the contract by the plaintiff was essential to make it effective. This acceptance was made on Nov. 23, 1927. The contract contained, *inter alia*, the provision, inserted in typewriting, that "this contract is subject to cancellation in 60 days if the business outlook for 1928 is not satisfactory." It also contained, *inter alia*, in clause 16, in printing, the provision that "this contract is not subject to cancellation except upon the payment of 25 per cent. of the purchase price herein stated." W. I. Miller, one of the partners, died on March 16, 1928, and the Bellefonte Trust Company is his administrator. M. J. Miller, one of the partners, wrote plaintiff on Feb. 17, 1928, requesting plaintiff not to ship the engine for at least six weeks, "as it would be impossible to handle such heavy equipment under the existing conditions such as we are having now." The engine was not shipped, and before the expiration of the requested six weeks' period, W. I. Miller died, and M. J. Miller, surviving partner, wrote plaintiff, "owing to the sudden death of my brother last week, I am compelled to ask you to cancel your contract with us for the 45 H. P. Primm Engine." Plaintiff sues in *assumpsit* to recover the sum of $618.75, with interest from March 21, 1928, such sum being 25 per cent. of the purchase price as per clause 16 of the contract. The defendants, by affidavit of defense, raise the question as to whether the provisions of clause 16 of the contract constitute a penalty or liquidated damages, and contend that it is the former and that plaintiff should declare, prove and recover, if at all, only such damages as it can properly show have been sustained by defendants' failure to receive and pay for the engine which is the subject of the written agreement. It is this question which we must now consider.

Mr. Justice Fell, in Kunkel & Jordan *v.* Wherry, 189 Pa. 201, has indicated the manner of determining questions of this sort. He says:

"The rule that in actions *ex contractu*, where the breach of an agreement admits of compensation, the recovery may be limited to the loss actually sustained, notwithstanding a stipulation for a penalty, is founded upon the principle that one party should not be allowed to profit by the default of the other, and that compensation and not forfeiture is the equitable rule. Equity will regard a penalty or forfeiture as intended to secure the fulfillment of a contract, and it may preclude the injured party from recovering more than a just compensation, or from obtaining a collateral advantage: Notes to Peachy *v.* Duke of Somerset, 2 Lead. Cases in Eq. 2044; Bispham's Eq., 178. Whether a sum named as compensation for the breach of a contract is to be considered as a penalty to secure its fulfillment, from which equity will

relieve, or as damages liquidated by the parties themselves, is a question which cannot be answered by the application of any general rule. The question is always one of construction, and any rule upon the subject is a mere guide to the intention of the parties. The grounds upon which each case is to be considered and determined are clearly stated by our Brother Mitchell in Keck *v.* Bieber, 148 Pa. 645: 'The general principle upon which the law awards damages is compensation for the loss suffered. The amount may be fixed by the parties in advance, but where a lump sum is named by them, the court will always look into the question whether this is really liquidated damages or only a penalty, the presumption being that it is the latter. The name by which it is called is of but slight weight, the controlling elements being the intent of the parties and the special circumstances of the case.' And he quotes with approval March *v.* Allabough, 103 Pa. 335: 'The question . . . is to be determined from the words of the whole contract, examined in the light of its subject-matter and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages and such other matters as are legally or necessarily inherent in the transaction.' From the nature of the case, the actual damages which would result from a breach of contract would not readily be susceptible of ascertainment, and it seems to us that it was the manifest intention of the parties not to leave them to the uncertain estimate of a jury but to fix them by express agreement. 'Uncertainty as to the extent of the injuries which may ensue' was said in Powell *v.* Burroughs, 54 Pa. 329, and Wolf Creek Coal Co. *v.* Schultz, 71 Pa. 180, 'to be a criterion by which to determine whether it is a case of liquidated damages or a penalty.' The damages named were for the breach of a single stipulation, and were not disproportionate to the loss which would probably result to the defendant from the failure of the plaintiffs to complete their work in time."

Let us review the contract in the instant case in the light of the words of Mr. Justice Fell and the cases relying upon the same.

The matter of cancellation was in the minds of the parties at the time of the execution of the contract, for they expressly stipulated, by inserting the type-written provision, that "this contract is subject to cancellation in 60 days if the business outlook for 1928 is not satisfactory." Construing such statement most favorably to the defendants, we conclude that, had the defendants elected to cancel the contract within such period of sixty days, no liability would have attached to the defendants. Hence, the provision in clause 16 means, in effect, that unless the contract is canceled within sixty days from its approval by the plaintiff, it cannot be thereafter canceled without the payment of 25 per cent. of the agreed purchase price. Was such a provision made to prevent, if possible, the cancellation of the agreement by the defendants? Or was it a sum predetermined by the parties as damages likely to be suffered by the plaintiff in the event of such cancellation? If the latter, is the predetermined sum disproportionate to the loss which would probably result to the plaintiff thereby?

It is to be noted from the agreement that there are several stipulations, differing in degree as to importance, for the payment of liquidated damages on default, all of which differ. The defendants agree to deliver to the plaintiff collateral notes evidencing the payment of the several instalments, and it is provided that in the event defendants fail to do so, the plaintiff may retain the sum paid down on the contract as liquidated damages for such failure. That nothing was paid down in the instant case does not affect the fact that

the parties stipulated specifically as to the amount of liquidated damages payable for each distinct breach. Other provisions are found in the agreement expressly providing as to what shall be the rights and remedies of the parties in the event of a breach of a particular stipulation. Such rights and remedies are specifically applied in proportion to the importance or peculiar application of the breach specified. None are provisions covering breaches of different degrees of importance.

After covering these several items of possible breach, the parties turn in their agreement to the question of cancellation and solely and specifically provide that cancellation can be had only on payment of 25 per cent. of the purchase price. This provision as to payment covers one condition only, and in the instant case was modified by the agreement of the parties to provide that cancellation could be had within sixty days of the acceptance of the contract by the seller without liability to the buyer. The provision for the payment of 25 per cent. of the purchase price does not extend to several matters of different degrees of importance. If it did, the cases of Keck v. Bieber, 148 Pa. 645; March v. Allabough, 103 Pa. 335; Shreve v. Brereton, 51 Pa. 175; York v. York Rys. Co., 229 Pa. 236; Emery v. Boyle, 200 Pa. 249, and Gross v. Exeter Machine Works, Inc., 277 Pa. 363, would apply and the provision mentioned would be held to be a penalty and not liquidated damages. It extends solely to cancellation after a period of sixty days from the date when the contract became effective. In the language of Justice Fell, in Kunkel and Jordan v. Wherry, *supra*, it is for "the breach of a single stipulation," and if we find that the damages named are "not disproportionate to the loss which would probably result" from such cancellation, we must, under this established rule, find that such a provision constitutes the sum agreed to be paid as liquidated damages and not as a penalty.

To effect the sales of its products, the plaintiff, as do all other manufacturing concerns of like nature, is compelled to maintain a sales organization and to send salesmen into the field to interview prospects. This was done in this case. The salesmen are usually provided with a drawing account, and are paid salaries, commissions and expenses. In addition thereto, there are other overhead charges to be met. The seller is required to invest large sums in plant and equipment, advancing payrolls and maintaining such plant and equipment at all times. The seller is, in addition thereto, entitled to a fair return on its investment and advances. This is commonly called profit. To separate and determine the proportion thereof applicable to the transaction between plaintiff and defendant would be difficult if not impossible. It is quite evident that there would be an uncertainty as to the extent of the plaintiff's injuries which ensued from defendants' cancellation of the contract. It was the manifest intention of the parties not to leave such damages to the uncertain estimate of a jury, but to fix them by express agreement. That it is not specifically designated as liquidated damages is of but slight weight.

In the automobile industry commissions equaling or at least closely approaching the percentage named in the stipulation which we are considering are paid for the sale of automobiles and, in addition thereto, the agent or dealer carries the costs of selling. Here the costs of selling were borne by the plaintiff and its profit is what remains from such percentage after the selling costs, interest and other overhead charges are deducted. We are of the opinion that the sum is not disproportionate to the damages likely to be suffered by the plaintiff by reason of defendants' breach in canceling the contract.

Having found that the stipulation in the instant case pertains to but one specific matter, to wit, cancellation, that the damages of the plaintiff are uncertain and difficult to exactly ascertain, and that the sum designated is not disproportionate to the damages which would probably result to plaintiff from defendants' breach in canceling the contract, we conclude that the provisions of clause 16 do not constitute a penalty but constitute liquidated damages as agreed to by the parties. We must, therefore, decide the point of law raised in defendants' affidavit of defense in favor of the plaintiff and against the defendants and enter the following order:

And now, July 16, 1929, after argument and careful consideration of the brief filed, it is held that the provisions of clause 16 of the written agreement entered into between the parties provide for liquidated damages and not for a penalty, and it is further ordered that defendants file a supplemental affidavit of defense to the averments of fact of plaintiff's statement within fifteen days.

From S. D. Gettig, Bellefonte, Pa.