## The Wolf Creek Diamond Coal Company *versus* Schultz *et al.*

1. In action for timber delivered, a witness for plaintiffs, on cross-examination, said in answer to defendants' question, that he had told plaintiffs not to deliver any more timber, and asked them to cancel the contract: the plaintiffs might properly ask him to give the whole conversation.

2. This rule obtains whether the part of the conversation is brought out by the direct examination of the party's own witness, or cross-examination of his adversary's.

3. A contract was signed "Wolf Creek Co., per J. K. Siegfreid, Supt., [SEAL]" (a scroll seal); and also with the names and seals of the other parties who were individuals.   Assumpsit was brought against the company for breach of the contract: the declaration was on a parol contract; the written contract was given in evidence without objection.   *Held*, to be a waiver of the objection that the instrument was a specialty.

4. Such variance can be taken advantage of only when the evidence is offered.

5. To take advantage of the form of action afterwards, the defendants should have proved affirmatively that the seal was the corporate seal.

6. By the contract the plaintiffs agreed to furnish the defendants *all* the timber they should require at their coal-mines, they to pay at the rate of eighteen cents per ton for all the coal mined, and should the tonnage during the year not amount to 75,000 tons, the defendants to pay the difference between the amount shipped and 75,000 tons at the rate of eighteen cents per ton.   *Held*, the price agreed on by the parties for the fulfilment of the contract was eighteen cents per ton for 75,000 tons.

[Wolf Creek Co. v. Schultz.]

7. Eighteen cents on the difference between the amount delivered and 75,000 tons, were stipulated damages, not a penalty.

8. Whenever the stipulation is a measure to determine a damage which would otherwise be uncertain and difficult to ascertain, it is a liquidation of damages and not a penalty.

March 6th and 7th 1872. Before THOMPSON, C. J., SHARS-WOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county:* No. 451, to January Term 1871.

This was an action of assumpsit brought February 28th 1868, by John Schultz and Thomas Patten, Jr., trading as John Schultz & Co., against The Wolf Creek Diamond Coal Company; the defendants were an incorported company.

The declaration was for an indebtedness of $12,000 on the common counts. There was also a special count, setting out *in ipsissimis verbis,* as a parol contract, an agreement dated January 9th 1867, between the defendants of the first part and the plaintiffs of the second part, by which the plaintiffs stipulated to deliver to the defendants at a place designated, "all kinds and sizes of sound timber" required about the Wolf Creek collieries for all "mining purposes and repairs inside and outside," from January 1st 1867 to January 1st 1868; in consideration of which the defendants agreed to pay the plaintiffs eighteen cents per ton for all the coal mined from the Wolf Creek Colliery, &c. Should the tonnage in 1867 not amount to 75,000 tons, the defendants to pay the difference between the amount shipped and 75,000 tons at eighteen cents per ton; the plaintiffs, during the continuance of the agreement, to keep a sufficient supply of such timber as the defendants should require; the timber to be furnished at rates particularly specified in the agreement and always to keep a supply of timber on hand at the colliery, "at least $2000 worth." The plaintiffs averred that they had faithfully performed their covenants, but the defendants did not perform their part of the agreement, viz: they "did not pay the plaintiffs eighteen cents per ton on 45,000 tons of coal, the difference between the number of tons actually shipped and 75,000 tons," and had not paid the plaintiffs for the timber furnished, &c., "as by the terms of its agreement it had undertaken and promised to do."

On the trial, March 25th 1870, before Ryon, P. J., the plaintiffs gave in evidence the contract declared on, it was executed thus:

"In witness whereof the parties have hereunto set their hands and seals; this * * *

"Wolf Creek Diamond Coal Co.
Per J. K. SIEGFRIED, Supt.　　[SEAL.]
JOHN SCHULTZ.　　　　　　[SEAL.]
THOMAS PATTEN, Jr.　　　[SEAL.]"

*all* the seals being scroll seals.

[Wolf Creek Co. *v.* Schultz.]

Siegfried·testified that the plaintiffs furnished timber during the year as agreed on by their contract, at one time they were a little short of $2000 worth of timber on hand ; there was sufficient for all the company's requirements except for one day ; the collieries were never suspended for want of timber.   The president of the defendants knew all about the contract with plaintiffs and approved it. There had been a "crush" in July in one of the veins and work was suspended for the remainder of the year ; the plaintiffs after the "crush" furnished timber to the plaintiffs as they required. Witness tried to get the plaintiffs to cancel the contract, "after consultation they replied that they would carry out the contract."

On cross-examination the witness, in answer to a question of defendants, said, that he told defendants "not to bring any more timber after July, and tried to get them to cancel the contract."

The plaintiffs proposed to ask witness to state "all the conversation which passed between them at the time."   This was objected to by the defendants admitted by the court and a bill of exceptions sealed.

Schultz, one of plaintiffs, testified that they had a stock of teams and wagons on hand for carrying on the business, and at the beginning of 1867, had $3500 worth of timber at the colliery ; they kept the defendants supplied all the time ; after the "crush," Siegfried the superintendent told them they need not haul timber for a day or two and in a day or two told them to haul again.

The defendants gave evidence that the amount of coal actually mined during the continuance of the contract was 29,931 tons ; that estimating that amount of coal only, there was still due to the plaintiffs on the 1st of January 1868 a balance of $2135.91 ; there was also on the bank of the colliery at that date $3117.03 worth of timber ; the defendants accounted to plaintiffs for the amount of tonnage actually shipped.  · Also, that sometimes there was not timber of the kind they wanted, and the hands had to stop ; they did not mine any coal after their stoppage in June 1867.

The defendants proposed to ask William Beddow one of their superintendants, "whether if the defendants had continued mining during the year 1867, they would or not have used up more timber than remained on the bank or at the colliery in December of that year."   Also to prove by same witness, "that prior to the stoppage of mining by the defendants in June 1867, the quantity of timber consumed was not greater in any one month or for any given period, than would have been required for a like time or period after that time, had· the defendants continued to mine for the balance of the year."

Both offers were rejected by the court and several bills of exception sealed.

After the evidence had closed, defendants' counsel had closed

[Wolf Creek Co. *v.* Schultz.]

his argument and plaintiffs' counsel had progressed in his argument, the plaintiffs offered to prove by Mr. Siegfried, that the defendants had a corporate seal, that the contract was not executed under the corporate seal, but the individual seal of witness who was their general agent. The offer was admitted by the court and a bill of exceptions sealed.

The witness testified that the company had a corporate seal, that he did not intend the scroll seal as their seal, it was put there by him at their request; "I intended simply to make a contract, that would be binding on both Schultz and the company by me as their agent. This scroll was put on simply as my own act, I knew this was not the official act of the company."

The plaintiffs asked the court to charge: That if the plaintiffs in good faith entered immediately after making the contract upon its performance, and during the year supplied the timber required according to the terms of the agreement, they are entitled to a verdict for the difference between 29,930 19-20 tons of coal actually shipped, and 75,000 tons of coal, at the rate of 18 cents per ton, with interest upon such sum from January 15th 1868.

The defendants requested the court to charge:—

1. That the plaintiffs' claim for damages in this suit is merely what they would have made under their contract, had the defendants continued to mine during the year 1867.

2. That plaintiffs have not shown they could have made any profit out of their contract, had the defendants continued to mine during the year 1867, and consequently can recover nothing in this suit.

3. That the plaintiffs have offered no evidence of any contract made with defendant, and seek to recover in no other except the agreement of January 19th 1867, in evidence. That such agreement is covenant under seal sealed by the defendants, and that as this suit is an action on the case, there can be no recovery in this suit.

4. The demand of the plaintiffs is according to the *narr.* filed for non-performance of a simple contract obligation in writing of the defendants, and none other, that the plaintiffs have given no evidence of any such contract, and consequently cannot recover.

5. That under the whole evidence the verdict of the jury must be for the defendants.

The court charged:—

["If the plaintiffs have substantially and bonâ fide complied with their contract, they are entitled to recover. If there are any small deficiencies, they can be compensated for in damages, which should be deducted from the amount due upon the contract."]

"The plaintiffs have supplied the Wolf Creek Diamond Collieries inside and outside for the year 1867 with timber under the contract in evidence. [The defendants agreed to pay for the timber

[Wolf Creek Co. v. Schultz.]

18 cents per ton on seventy-five thousand tons, whether that amount was shipped or not.    This amount the defendants are entitled to recover for, allowing any losses from want of timber to one or two sets of mines, as testified on the part of the defence.    This is a sufficient answer to the points."]

The verdict was for the plaintiffs for $11,000.

The defendants removed the record to the Supreme Court by writ of error.

They assigned for error :—

1. That the court allowed Siegfried to state additional conversation between him and plaintiffs at the time he asked them to cancel the contract.

2. That the same witness was permitted to testify that the defendants had a corporate seal, but that the contract was executed by his individual seal.

3, 4. The refusal to admit the testimony of Beddow.

5. Denying plaintiffs' point.

6, 10. Not affirming defendants' points.

11, 12. The parts of the charge in brackets.

13. Not submitting to the jury whether the seal to defendants' name on the agreement was the defendants' seal, and whether they had adopted it.

*F. G. Farquhar* and *F. W. Hughes*, for plaintiffs in error.—As to the 2d specification, parol evidence is inadmissible for the purpose of altering the legal operation of an instrument by evidence of an *intention* to an effect which is not expressed by the instrument: Stark. Ev. 666–8 ; Wright *v.* Weakly, 2 Watts 89.    The common seal of a corporation is not necessarily the seal that is commonly used.    A corporation may adopt the seal of another or an ink impression: Crossman *v.* Hilltown Turnpike Co., 3 Grant 225 ; 10 Cushing 27 ; Story on Agency 181, 141 and note ; Reynolds *v.* Glasgow Academy, 6 Dana 37.    The action should have been covenant: 1 Chitty's Pl. 111, 128, 134 ; Crossman *v.* Turnpike Co., *supra*.

*J. W. Ryan* (with whom were *S. W. Geer* and *L. Bartholomew*), for defendants in error.—Seal of a corporation must be proved: Maises *v.* Thornton, 8 T. R. 303 ; 2 Starkie on Ev. 300 ; Jackson *v.* Pratt, 10 Johns. 381 ; Hopkins *v.* Mehaffy, 11 S. & R. 126 ; Foster *v.* Shaw, 7 Id. 156.    The evidence might be admitted after the case was closed: Richardson *v.* Stewart, 4 Binney 198. The damages were stipulated by the contract; it was not a penalty: Powell *v.* Burroughs, 4 P. F. Smith 329.

The opinion of the court was delivered, March 18th 1872, by

SHARSWOOD, J.—The first assignment of error is, that after a witness of the plaintiffs below had said on his cross-examination :

[Wolf Creek Co. v. Schultz.]

"I think I did tell Schultz & Company not to bring any more timber after July. I tried to get them to cancel the contract," the learned judge before whom the cause was tried allowed the plaintiffs' counsel to ask him to relate the whole of what was said at that time. It is elementary law, that when part of a conversation is given in evidence by one party, the opposite party is entitled to bring out the rest of it. The whole may be, and generally is, necessary for the proper understanding of all its parts: 1 Greenl. Ev. § 201. Nor can it make any difference whether the part is brought out by the direct examination of a party's own witness or the cross-examination of the witness of his adversary. When the witness said: "I tried to get them to cancel the contract," leaving the inference that Schultz & Company had refused, if they gave any reason for their refusal, it was right that they should have the benefit of it in explanation of their conduct.

The second assignment of error is, that the court permitted the plaintiffs below to prove that the defendants had a corporate seal. It matters not whether this was an error or not, or at what period of the trial the plaintiffs introduced the evidence, it did not harm the defendants below, who are the plaintiffs in error. This action was in form assumpsit. The declaration was special on a written contract set out *in hæc verba*. The instrument in evidence had an ink scroll opposite the name of the defendant—by their superintendent. It was also expressed in the body to be under the hands and seals of the parties. It may be, and there are cases which decide, that such a scroll may be adopted and used as a corporate seal: Angell and Ames on Corpor., § 218. In this case, however, the instrument was declared on as a parol contract, it was offered in evidence as such, and not having been objected to, because it was a specialty, it was admitted. This was a waiver, for certainly variance can only be taken advantage of when evidence is offered. If the defendants wished to raise the question of the form of action after that, it was incumbent on them to prove affirmatively that the scroll had been authorized or recognised as the seal of the corporation. Hence there was no evidence before the jury that this was not a parol contract as declared on, and no question could properly have been submitted to them upon that subject. This disposes also of the eighth, ninth, tenth, and thirteenth assignments.

Those which remain relate directly or indirectly to the measure of damages. By the agreement the plaintiffs stipulated "to furnish and deliver" to the defendants "a good and sufficient supply of all kinds and sizes of sound timber," such as might be required by them for all mining purposes for one year, and the defendants agreed to pay the plaintiffs the sum of eighteen cents on each and every ton mined, which should be mined and sent away from their colliery, and they also agreed, that should the tonnage not amount to seventy-five thousand tons, they would

[Wolf Creek Co. *v.* Schultz.]

pay " the amount of difference between the number of tons actually shipped and seventy-five thousand tons, at the rate of eighteen cents per ton." There was no dispute that the number of tons actually shipped was 29,030 19-20ths, and the plaintiffs had been paid for that amount. It is clear from the point presented by the plaintiffs, and which it is complained here that the court did not negative, that all that was claimed below was the difference between the amount of coal actually mined and seventy-five thousand tons, at the rate of eighteen cents a ton. This was the measure of compensation or price agreed upon by the parties for the fulfilment of the contract by the plaintiffs. The charge of the court is to be construed accordingly, and could not have been otherwise understood by the jury. The terms of the agreement are perfectly plain, and indeed its construction is not in dispute.

But it is contended that so far as it exceeds the amount of coal actually delivered it is a penalty, and that the plaintiffs should be limited to the damage actually suffered by them. But how is this to be ascertained with any degree of certainty ? Clearly the stipulation is neither in name or in substance a forfeiture or penalty, but a measure to determine what otherwise would be a loss or damage, uncertain and difficult to be ascertained. Whenever this is the case, it is held to be liquidated damages : Sedgwick on Dam. 449 ; Westerman *v.* Means, 2 Jones 97 ; Streeper *v.* Williams, 12 Wright 450. In Powell *v.* Burroughs, 4 P. F. Smith 329, just such a covenant in the lease of a coal-mine for the payment of rent was held to be liquidated damages to the extent of non-performance, and it is there said that " the uncertainty as to the extent of the injury which may ensue is a criterion by which to determine whether it is a case of liquidated damages or a penalty."

Judgment affirmed.