## Emery, Appellant, *v.* Boyle.

200      249
37SC 121

*Contract—Liquidated damages—Penalty.*

Whether a sum named as compensation for breach of contract is to be deemed a penalty to secure its fulfilment or damages liquidated by the parties themselves, is primarily a question of intention to be gathered from the agreement with the aid of such light as can be derived from circumstances.   Equity will regard a penalty as intended to secure the fulfilment of a contract and will limit a recovery to the loss actually sustained, notwithstanding the stipulation of the parties, on the principle that one party should not be allowed to profit by the default of another.   Compensation, not forfeiture, is the equitable rule ; but effect will be given to the intent of the parties as ascertained unless it conflicts with some rule of law or equity.

Generally where the covenant is for the performance or the non-performance of a single act or of several acts, damages for the breach of which cannot be measured by any fixed standard, the sum named if reasonable in amount will be considered as liquidated damages.   The fact that there are a number of stipulations of different degrees of importance does not vary the rule, if the measure of damages for all of them is uncertain, but regard should be had to it in ascertaining the intention.

Where a contract in settlement of an action for libel provided that the

defendant in the libel suit should not publish any libelous or defamatory article reflecting in any way upon the business, social or personal character of the other party, and the contract also provided that in case of a breach judgment might be entered against the defendant for " $5,000, liquidated damages," and thereafter the defendant published an article charging the plaintiff with bribing voters in his candidacy for congress, judgment may be entered for the whole sum of $5,000, as liquidated damages.

Argued May 6, 1901.  Appeal, No. 40, Jan. T., 1901, by plaintiff, from order of C. P. McKean Co., Oct. T., 1900, No. 333, making absolute a rule to open judgment in case of Lewis Emery, Jr., v. P. C. Boyle.  Before McCollum, C. J., Mitchell, Fell, Brown, and Potter, JJ.  Reversed.

Rule to open judgment.

The agreement under which judgment was entered was as follows :

" Memorandum of original agreement made and concluded this 9th day of February, 1897, by and between Lewis Emery, Jr., of the first part and P. C. Boyle, of Oil City, of the second part.

" Witnesseth : That whereas a certain action for libel heretofore pending in the courts of McKean county, Pa., at No. 43, June term, 1894, wherein Lewis Emery, Jr., is the plaintiff, and P. C. Boyle the defendant, has been settled by the parties and whereas a part of the consideration for such settlement is the agreement on the part of the defendant P. C. Boyle that he will in the future refrain from publishing or allowing to be published in the columns of the Oil City Derrick or any other paper with which he is connected or over which he has control, any article or articles reflecting upon the business, social or political character of the plaintiff, Lewis Emery, Jr.

" Now, therefore, this agreement witnesseth : That P. C. Boyle in consideration of the settlement of the above mentioned litigation does hereby promise, covenant and agree to and with the said Lewis Emery, Jr., that he will not publish or cause or allow to be published in the Oil City Derrick or in any other paper with which he is connected or over which he has any control nor will he write or cause to be written in any paper whatsoever any libelous or defamatory article concerning the said Lewis Emery, Jr., or any article reflecting in any way upon the business, social or personal character of the said Lewis Em-

ery, Jr., nor any libelous or defamatory article concerning or affecting any business, firm or corporation with which the said Lewis Emery, Jr., is connected.

"And further in case of a violation of the foregoing agreement the said P. C. Boyle hereby authorizes any attorney of any court of record of McKean county to appear for him and confess judgment against him for the sum of $5,000 (five thousand dollars) liquidated damages, waving inquisition, exemption and stay of execution.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

(Signed) "LEWIS EMERY, Jr. [L. S.]<br>P. C. BOYLE." [L. S.]

On September 6, 1900, the defendant published the following article :

### "WATCH THE POSTMASTERS.

"We understand the postoffices in Warren County are acting in a fiduciary capacity for Kunnel Emery, and that money has been placed in the hands of certain postmasters by Emery agents to promote the election of Mr. Emery by a wholesale debauchery of the votes. This is dangerous business, and may react upon the guilty parties with the suddenness and deadly effect of an electric shock. In every instance the persons suspected are the appointees of Charles W. Stone and he is supposed to have guilty knowledge of the practice.

"Postmaster General Smith has promulgated an order forbidding postmasters and their employees to contribute money to campaign committees for political purposes. This was for the purpose of protecting letter carriers and clerks, and very properly, from the sweating processes of campaign managers. It is high time another order was promulgated prohibiting postmasters and employees of the department to accept money from candidates for political service.

"We have the names and dates and other information of value touching the subject-matter herein charged, to which, if it interests him, the Postmaster General is welcome."

Judgment was entered under the agreement for $5,000. Subsequently the court in an opinion by MORRISON, J., made absolute the rule to open the judgment on the ground that the

amount named in the agreement was a penalty and not liquidated damages.

*Error assigned* was the order of the court.

*George A. Berry,* with him *Robert L. Edgett,* for appellant. —The sum agreed to be paid in case of violation of the contract is to be held as liquidated damages: Streeper v. Williams, 48 Pa. 450; Mathews v. Sharp, 99 Pa. 560; Kelso v. Reid, 145 Pa. 606; Malone v. Phila., 147 Pa. 416; Stover v. Spielman, 1 Pa. Superior Ct. 526.

*John J. Henderson,* with him *D. H. Jack, J. M. McClure, J. W. Boughton* and *Breene & Wilbert,* for appellee.—In seeking to ascertain the real intent of the parties the courts lean strongly towards the construction that the sum fixed is a penalty rather than liquidated damages. The language of the parties is not conclusive and will be strictly construed: Hale on Damages, 127, and elaborate discussion and collection of authorities therein, pages 123–141; Mathews v. Sharp, 99 Pa. 560; McPherson v. Robertson, 82 Ala. 459; Keck v. Bieber, 148 Pa. 645.

OPINION BY MR. JUSTICE FELL, July 17, 1901:

Whether a sum named as compensation for a breach of a contract is to be deemed a penalty to secure its fulfilment or damages liquidated by the parties themselves, is primarily a question of intention to be gathered from the agreement with the aid of such light as can be derived from circumstances. Equity will regard a penalty as intended to secure the fulfilment of a contract and will limit a recovery to the loss actually sustained, notwithstanding the stipulation of the parties, on the principle that one party should not be allowed to profit by the default of another. Compensation, not forfeiture, is the equitable rule; but effect will be given to the intent of the parties as ascertained unless it conflicts with some rule of law or equity. It cannot be said to do this merely because the amount on which the parties have agreed exceeds that which the court may consider an adequate compensation for the injury. The rule established by our cases was thus stated in March v. Allabough, 103 Pa. 335: " The question . . . is to be determined by the in-

tention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its whole surroundings; and in the examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages and such other matters as are legally or necessarily inherent in the transaction." This as pointed out by our Brother MITCHELL in Keck vs. Bieber, 148 Pa. 645, is substantially a restatement of the rule as given in Streeper v. Williams, 48 Pa. 450, with more prominence given to the intention of the parties as a controlling element.

The difficulty of measuring the damages which would result from a breach of contract is always an important element, if not a controlling one, in determining whether the intention of the parties was to fix a sum certain as the just amount to be recovered instead of leaving the question to the uncertain estimate of a jury: Powell v. Burroughs, 54 Pa. 329; Wolf Creek Co. v. Schultz, 71 Pa. 180; Kelso v. Reid, 145 Pa. 606. Generally where the covenant is for the performance or the nonperformance of a single act or of several acts, damages for the breach of which cannot be measured by any fixed standard, the sum named if reasonable in amount will be considered as liquidated damages. The fact that there are a number of stipulations of different degrees of importance does not vary the rule, if the measure of damages for all of them is uncertain, but regard should be had to it in ascertaining the intention. "The mere circumstance that the contract contains various stipulations will not, however, justify the inference that a stipulation for the liquidation of damages does not mean what it says and should be disregarded as an empty threat . . . . ; although it may be ground for adopting such an interpretation when the meaning of the parties is not distinctly expressed:" Notes to Peachy v. Duke of Somerset, 2 Leading Cases in Equity (White & Tudor), 2064.

The rule where one sum is stipulated for the breach of a contract securing several things is thus given in Sedgwick on Damages, section 413. "A sum fixed as security for the performance of a contract containing a number of stipulations of widely different importance, breaches of some of which are capable of

accurate valuation, for any of which the sum stipulated is an excessive compensation, is a penalty." In discussing the rule it is said : " But it is very difficult to see how a mere difference of degree in the importance of the stipulations can of itself affect the question, provided the damages are uncertain or difficult of computation, unless indeed the difference creates that glaring sort of a disproportion between the injury likely to arise from a breach and the stipulated remedy, which enables the court to say at once that the parties could not have intended such a result or that it would be unjust to allow this expressed intention of the parties to govern. Where a contract consists of several important stipulations, and damages cannot be adequately assessed for a breach of any of the stipulations, the court (except no doubt, in case of great disproportion between the stipulated·sum and the actual loss) will enforce the payment of the stipulated sum as liquidated damages."

The consideration of the contract in this case was the settlement of an action for libel. The defendant covenanted that he would " not publish or cause or allow to be published in the Oil City Derrick or any other paper with which he is connected or over which he has any control, nor will he write or cause to be written in any paper whatsoever any libelous or defamatory article concerning the said Lewis Emery, Jr., or any article reflecting in any way upon the business, social or personal character of the said Lewis Emery, Jr., nor any libelous or defamatory article concerning or affecting any business firm or corporation with which the said Lewis Emery, Jr., is concerned."

The plaintiff was engaged in producing oil in five different states. The defendant was the editor and publisher of a newspaper which had a wide circulation and was read in all the communities where the plaintiff had " business, social and personal relations." As stated by the defendant: " It circulated wherever oil is produced." His power to injure the reputation and business of the plaintiff was very great and it was impossible to estimate with accuracy the extent of the injury which might be caused by a libelous or defamatory publication concerning him personally or his business interest. Under these circumstances the parties contracted and their agreement leaves no room for doubt as to their meaning. There is nothing ambiguous about it. It is clear and distinct in all of its provisions

and the sum for which judgment was to be confessed in case of its violation is "five thousand dollars, liquidated damages." This sum cannot be regarded as a penalty nor relieved against on the ground that it is grossly disproportionate to the injury.

To entitle the plaintiff to judgment in pursuance of the terms of the agreement, it is not necessary that the publication should be libelous. It was within the letter and meaning of the covenant if it reflected in any way upon the business, social or personal character of the plaintiff. But it violated the agreement in both respects. It charged an indictable offense which seriously reflected on the character of the plaintiff and on its face it was libelous. Even if it would have been a defense under this covenant, the defendant on whom the burden of proof rested on the hearing of the rule to open the judgment, failed to show that the publication was made from a proper motive or in a proper manner or upon reasonable or probable information as to its truth. It is therefore unnecessary to consider the other question raised in this appeal by the defendant.

The order of the court making absolute the rule to open the judgment and to stay proceedings is reversed and set aside.