Opinion by
 

 Stadtfeld, J.,
 

 This is an appeal by defendant from a judgment entered by the court in an action of assumpsit tried by the court without a jury and finding in favor of plaintiff by Jones, J. in the Municipal Court of Philadelphia County in the sum of $91.23. A motion by defendant for judgment non obstante veredicto was filed but overruled by the court.
 

 At the trial a statement of the principal facts was made by counsel for the plaintiff and agreed to by counsel for the defendant.
 

 The admitted statement of facts shows that the plaintiff is a corporation organized under the laws of the Commonwealth of Pennsylvania and doing business at its central office, 11th and Sansom Streets, Philadelphia. It operates ,an electric burglar alarm system in which the premises of its subscribers are installed with certain electrical equipment and if the premises are in any way disturbed, an electric alarm is communicated over wires to the central office and guards are immediately sent to the premises to apprehend any one not authorized to be there.
 

 Under date of February 26, 1937, the defendant entered into a written contract with the plaintiff for this burglar alarm service. The necessary connections were made on March 10, 1937, and service rendered to the defendant thereafter.
 

 The contract provides for a monthly service charge of $15.25 and the term of the contract was for a period ending April 1, 1938, but to continue on from year to year in the absence of thirty days’ written notice to
 
 *509
 
 terminate prior to the end of any current term. The contract also provides that in the event of any default on the part of the subscriber, resulting in a breach of the contract, the subscriber is liable for liquidated damages therefor, calculated at the rate of 50% of the service charge to the end of the current term.
 

 .On February 28, 1938, the defendant notified the plaintiff in writing as follows: “This is to notify you that we wish to discontinue service at the expiration period as specified in your contract of February 26, 1937. We wish to continue this service on a month to month basis without a thirty day notification. Kindly acknowledge the receipt and oblige, we are Very truly yours, Franco-American Novelty Company Per Maurice Goldstein.”
 

 The plaintiff did not acknowledge receipt of the notice nor take any action in connection therewith, but continued to render its service to the defendant. On subsequent dates, the defendant wrote the plaintiff as follows: “April 5, 1938 — Gentlemen: Kindly terminate our contract for safe protection on May- 1st, 1938. Please acknowledge receipt of this letter. Thanking you for your prompt attention, we are Very truly yours, Franco-American Novelty Co.”; “June 1st, 1938— Gentlemen: Kindly be advised that we are discontinuing your service and must have your cabinet removed upon receipt of this letter. Respectfully yours, Franco-American Novelty Co.”; “June 3rd, 1938 — Gentlemen: On two previous occasions we notified you to remove your equipment from our premises and to date. you have failed to do so. You are herewith advised that unless you remove your property not later than Saturday, June 4th, 1938, we shall forthwith disconnect all of your equipment and hold same at the above address for delivery to you. Very truly yours, Franco-American Novelty Co. P. S. Previous notices to you were on February 28th, and April 5th, 1938.”
 

 The plaintiff took no action with respect to the fore
 
 *510
 
 going letters, but on June 4,1938, tbe defendant refused to make tbe necessary manual connections to tbe alarm in order that the service might be rendered, as a result of which the service was disconnected on that date.
 

 The defendant had paid the monthly service charge to June 1, 1938. The plaintiff claims $1.53 for the actual service rendered to the defendant from June 1, 1938, to June 4, 1938, which is calculated at the rate of $15.25 per month. The plaintiff also claims that as a result of the disconnection and refusal to accept the service, the defendant became liable to the plaintiff in the sum of $75.49 as liquidated damages calculated at the rate of 50% of the service charge from the date of disconnection, June 4, 1938, to the end of the then current term, April 1, 1939.
 

 The plaintiff’s witness testified with respect to the physical construction of the alarm system. He said that at the end of the day, when the subscriber closes his premises, it is necessary for the subscriber to give a certain signal and then to lock his door. If this is done, the alarm is set and will stay on until a similar signal is given in the morning for the opening of the place of business. He further said that if at nine o’clock in the evening, the subscriber has not set the alarm, then an investigation is made and it is entirely within the power of the subscriber to refuse to set the alarm and refuse to accept the service. This witness was produced by the plaintiff to show that the refusal to accept the service and the disconnection brought about by the defendant on June 4, 1938, could as well have been done by the defendant on April 1, 1938, or at any other time.
 

 The defendant testified that he had repeatedly written the Holmes Company to the effect that he wanted to disconnect the service but nevertheless continued to accept the service up until June 4, 1938, when hd refused to make the necessary connections. He specifically said
 
 *511
 
 that he could have refused to accept the service at any other time by doing exactly what he did on June 4, 1938. In answer to a question by the trial judge why he did not refuse the service on April 1, 1938, at the end of his yearly contract period, he said that he wanted to continue the service on a month to month basis until he had completed his arrangements to take another service.
 

 It is the plaintiff’s contention that the notice of February 28, 1938, was not a sufficient notice to terminate the contract at the end of the then current term, to wit, April 1, 1938. If plaintiff’s contention be correct, it is clear that the contract would renew itself for the further period of one year and that the defendant would be liable under the terms of the contract until April 1, 1939. The plaintiff also contends that the conduct of the defendant in holding over after April 1, 1938, is inconsistent with a termination of the contract and evidences an attempt to continue the contract after April 1, 1938, on a basis never agreed to by the plaintiff.
 

 We quote from the opinion of the Supreme Court in
 
 Wright v. Bristol P. Leather Co.,
 
 257: Pa. 552, 556, 101 A. 844: “To be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, conveying an unquestionable purpose to insist on the rescission. And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so.” See also
 
 Fotterall v. Armour,
 
 218 Pa. 73, 66 A. 1001;
 
 Spiess v. Simon,
 
 65 Pa. Superior Ct. 311, 312;
 
 Gold et al. v. Fox Film Corp.,
 
 304 Pa. 114, 120, 155 A. 287.
 

 The notice of February 28, 1938, is deficient under the law to be effective. It is apparent that defendant wished plaintiff’s service to continue; it was plainly not his intention to terminate or rescind the contract. By its ambiguity, it may be construed to have been an
 
 *512
 
 inquiry regarding a change in the term of the contract, i. e., from year to year to month to month; from one requiring thirty days to terminate to one without the requirement of formal notification.
 

 Inconsistent with defendant’s claim that he terminated the contract at the end of the initial period, the defendant continued to accept the service after April 1, 1938. The defendant says, in his affidavit of defense, referring to the letter of February 28, 1938, “In accordance with said letter, the original contract became a contract from month to month without a thirty day notification.” The defendant’s position must necessarily be that the original contract was not terminated but rather was changed or modified as a result of the notice. When the defendant again wrote to the plaintiff on April 5, 1938, he asked that the contract be terminated on May 1, 1938. This is further evidence that the defendant considered the contract still in effect after April 1, 1938.
 

 Accordingly, the defendant’s position must be that the notice of February 28, 1938, did not terminate the contract between the parties, but modified it, at least, to the extent that the contract thereafter continued on a month to month basis. The plaintiff never accepted the defendant’s offer to change the terms of the contract, nor can it be said that the plaintiff’s non-action in the matter was an implied acceptance or an estoppel.
 

 In
 
 Smith, Executor v. Snyder,
 
 168 Pa. 541, 32 A. 64, a lessee gave due notice to his lessor of his intention to terminate at the end of the current term. Before the expiration of the lease, the lessee proposed to remain in possession after the expiration of the lease as a tenant from month to month. This proposal was made to the landlord’s agent, who promised to see whether the lessor was willing that he should so remain, and to let him know in time so that he would not be prejudiced by holding over. The lessee never had any communication from the lessor or his agent before the
 
 *513
 
 expiration, and, construing this failure to communicate with him as an acceptance of his proposal, he continued in possession after the expiration date. The question before the court was “Was he (lessee) justified in so construing the broken promise of the agent?” The Supreme Court very aptly held at pp. 543-544: “We confess our inability to discover in it any authorization of a continued possession of the premises on new terms. If the lessee in pursuance of the notice he gave had vacated the premises and the lessor had sued him for rent accruing the next year, on the ground that he had not given the notice required by the lease, a jury would have been justified in finding from the conduct of the lessor a waiver of written notice, and such finding would have defeated his claim. But this conduct did not create a new tenancy nor authorize a finding from it of an acceptance of the lessee’s proposal.”
 

 We also quote from the opinion of the court below in answer to defendant’s contentions: “There is no evidence of an acceptance of the defendant’s offer, if the letter be regarded as an offer. The conduct of the plaintiff contradicts any such conclusion for the plaintiff continued to render the same kind of service for the same charge and the defendant continued to accept such service and to pay the charge therefor as under the contract dated February 26, 1937, to and including June 1, 1938. From the standpoint of conduct of the parties after April 1, it is an affirmance of a renewal of the contract. Cases cited by defendant’s counsel such as
 
 Lineaweaver’s Estate,
 
 284 Pa. 384, do not support defendant’s contention; facts differing, legal conclusions differ.”
 

 In our opinion the record does not disclose any termination of the contract according to its terms.
 

 Appellant contends that the provision for liquidated damages under the contract is not enforceable in the event of a breach by the subscriber without proof- of the actual damage sustained.
 

 
 *514
 
 The principle governing the disposition of this question is discussed in a very comprehensive- opinion by Judge James of this court in
 
 Vrooman v. Milgram,
 
 124 Pa. Superior Ct. 145, 147, 148, 188 A. 538, from which we quote: “Appellant has confined himself solely to the question of whether the deposit money was to be regarded as liquidated damages or a penalty. ‘The question whether the amount stated in a conditional bond or contract is to be taken as a penalty or a liquidation of damages arising from a breach of the condition, is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction.’
 
 March v. Allabough,
 
 103 Pa. 335, 341. ‘The general principle upon which the law awards damages is compensation for the loss suffered. The amount may be fixed by the parties in advance, but where a lump sum is named by them the court will always look into the question whether this is really liquidated damages or only a penalty, the presumption being that it is the latter. The name by which it is called is but of slight weight, the controlling elements being the intent of the parties, and the special circumstances of the case’:
 
 Keck v. Bieber,
 
 148 Pa. 645, 646, 24 A. 170. The difficulty of measuring the damages which would result from a breach of contract is always an important element, if not a controlling one, in determining whether the intention of the parties was to fix a sum certain as the just amount to be recovered instead of leaving the question to the uncertain estimate of a jury:
 
 Emery v. Boyle,
 
 200 Pa. 249, 49 A. 779. These general principlés have been approved in many cases among which
 
 *515
 
 are:
 
 Kunkel & Jordan v. Wherry,
 
 189 Pa. 198, 42 A. 112;
 
 York v. York Railways Co.,
 
 229 Pa. 236, 78 A. 128;
 
 Ambridge Boro. v. P. & B. St. Ry.,
 
 234 Pa. 157, 82 A. 1105;
 
 Gottschall v. Kapp,
 
 47 Pa. Superior Ct. 102;
 
 Ellis v. Roberts, et ux.,
 
 98 Pa. Superior Ct. 49.”
 

 The measure of damage is not limited to the actual costs of disconnection and removal of appellee’s facilities, but includes the loss of its bargain or value of its contract. This feature of the case is very aptly discussed in the able opinion of the trial judge from which we quote: “In the instant case it is evident from the nature of the services which the contract discloses were to be rendered by the plaintiff, the satisfactory rendition of which services is not disputed, that damages for the breach of this contract on the part of the subscriber cannot be ascertained by any satisfactory and known rule. Manifestly to render such services as the plaintiff rendered it was required to have employees. The number of the employees and the terms of their employment would be determined by the number of the subscribers and the term-period of the contracts which the plaintiff had with its subscribers. Being thus prepared, as required, to render service to its subscribers, breaches of contracts by discontinuance of service by subscribers necessarily entailed loss to the plaintiff. How to calculate and adjust the damages thus resulting were considered by the parties. Accordingly the contract prescribed the standard of measurement for the determination of damages. The damages are determined by a percentage of the actual charge which was stipulated to be paid for the services which the plaintiff agreed to render during the term of the contract the minimum of which was one year. The defendant knew, as did the plaintiff, exactly what the effect of a breach of the contract would be and that the determination of the amount of the liquidated damages was made to conform to the period of time from the date of the breach to the end of the contract or its renewal. For
 
 *516
 
 example, the damages in the case of a breach of the contract thirty days prior to its expiration would be fifty per cent of $15.25. By this standard was the finding in the instant case calculated. The damages undoubtedly meet the requirements of the cited case, for they had ‘been the subject of actual and fair calculation and adjustment between the parties.’
 
 (Shreve v. Brereton,
 
 51 Pa. 175)..” With these views we agree.
 

 We find no error in the disposition of the case by the court below.
 

 Judgment affirmed.