## Becker-Mills, Inc., v. Bosher

116

*Bernard Wolfman*, for plaintiff.

*R. Singer*, for defendant.

WINNET, J., March 23, 1949.—The contract between the parties was designed to prevent new automobiles reaching the "grey" market by providing liquidated damages of $500 to be paid to a charity in the event of a resale of the automobile within six months. To plaintiff's complaint, alleging a breach by a resale within the period, defendant filed preliminary objections in the nature of a demurrer.

The allegations in the complaint are: That plaintiff, a dealer in new automobiles, entered into a contract on August 26, 1946, to sell defendant a Pontiac automobile, delivery to take place as soon as possible; the agreement contains a stamped notation that it is subject to Government regulations and an agreement between buyer and seller as to the price of the automobile at time of delivery; no delivery was made until August 16, 1948, at which time the parties entered into an agreement under seal which provided that defendant would not resell the car within six months, and in the event of a breach he would pay plaintiff $500 as liquidated damages which would be paid over by plaintiff to an organized charity. The complaint also alleges that plaintiff holds a franchise from the Pontiac Motor Division of the General Motors Corporation; that since the resumption of the manufacture of automobiles for normal civilian use the demand has exceeded the supply; that the good will of the business of plaintiff ,and the manufacturer was

being damaged by new automobiles being sold at prices in excess of the regular retail price in the used car market through persons who had obtained them from dealers and who were not bona fide purchasers; that in order to protect this good will and to prevent this "grey" market, plaintiff had established a policy of requiring its customers to agree not to resell a new automobile within a period of six months without first obtaining its consent. Defendant did resell the car within the six-month period and plaintiff has brought suit to recover the liquidated damages.

Defendant's preliminary objections in the nature of a demurrer raise three distinct questions: (1) Is there consideration for the agreement made at the time of delivery of the car? (2) Is the agreement restraining the sale of the new automobile for a period of six months invalid because it is in restraint of trade? (3) If the subsequent agreement is otherwise valid, is the provision to pay $500 upon a breach in the nature of a penalty and, therefore, unrecoverable?

The argument of defendant is that the agreement of sale executed on August 26, 1946, is a complete one obligating plaintiff to deliver a Pontiac car as soon as possible. Hence the subsequent agreement, it is contended, is invalid for lack of consideration; plaintiff in 1948 was doing only what it was required to do in the agreement of 1946. All that need be said on this point is that the agreement of August 1948 is under seal and, therefore, needs no consideration. One difficulty which arises in relation to the agreement is that defendant did not sign his name immediately to the left of the seal but rather slightly below and to the left. In view of the fact the testimonium clause states that "buyer has hereunto set his hand and seal", the mere fact that he did not sign precisely alongside the seal is unimportant. Where there is a recital that the

agreement is being executed under seal and there is a printed seal on the form, there is a presumption that the signatory attached the seal in signing his name: Commonwealth v. Gutelius et al. (No. 1), 287 Pa. 441.

Since the agreement contains the restriction against a resale, the next question is whether it is in restraint of trade. This point, too, requires no lengthy discussion. The provision is not unreasonably in restraint of trade.

"It is now the rule in this jurisdiction as well as most others that where a contract is limited as to time or space it is not ipso facto against public policy but it is necessary to make further inquiry and determine whether the restriction is reasonable": Harris Calorific Company v. Marra et al., 345 Pa. 464, 469.

The clause restricts a resale for a period of six months. In view of the prevailing conditions in the automobile market it is unquestionably reasonable. The inflationary pressures which were held in check by the Federal Price Control Act during the war burst forth as soon as these controls were abandoned. There existed a great demand for new automobiles. Unscrupulous persons, taking full advantage of citizens, sold cars at greatly inflated prices. Legitimate customers awaiting their turns on long lists for automobiles at advertised prices were at serious disadvantage. Reputable new car dealers hit upon this restrictive clause as a method of preventing new automobiles from reaching the "grey" market. A restriction of resale of a new automobile within six months would tend to restrict the sale of new automobiles only to those who wanted them for personal use. The restrictive provision was not only a reasonable one but was also calculated to promote public policy against "grey" markets and inflationary transactions.

Nor is it necessary to strain construction of the agreement to hold the provision for liquidated dam-

ages valid. If it were, a court should do so in the public interest. This leads us to a consideration of the provision of the agreement of $500 liquidated damages to be paid by plaintiff to an organized charity.

It is generally regarded that whether an amount stated in a contract is liquidated damages or a penalty, depends on the intent of the parties. In addition to the expressed intention of the parties there are two other controlling factors: (1) The ease or difficulty that would confront a jury in any attempt to measure actual damage, and (2) the reasonableness of the sum fixed: Holmes Electric Protective Co. of Philadelphia v. Goldstein, 147 Pa. Superior Ct. 506; Emery v. Boyle, 200 Pa. 249.

That plaintiff would be damaged by the resale in the used car market cannot be questioned. There is first of all the damage to plaintiff's good will among its other customers. If defendant has obtained a new automobile from plaintiff which is being resold, there may be a justifiable suspicion against plaintiff that he is not selling to legitimate customers. The manufacturer of automobiles may also regard plaintiff with suspicion if the automobiles which are being delivered to him are reaching the "grey" market. He may be suspected of a plot to avoid the requirements of his franchise to sell at the advertised price. It may result in a cancellation of his franchise or a cut down of his allotment of automobiles. This is a serious damage, especially in a market where the demand is great. How could a jury, or a court, estimate the amount of this damage to plaintiff? The courts should, therefore, welcome a stipulated amount as the damage in the event of a breach.

Is the amount of $500 unreasonable? We do not think so. It is reasonably calculated to take the profit out of the subsequent transaction and thus discourage

the practice. The device of having the $500 payable to a charity is, indeed, a happy one. First of all, it indicates that the primary consideration for the provision was the protection of the consuming public. To allow plaintiff, the dealer, to retain the amount would be an indirect method of sharing in a "grey" market resale. Giving it to a worthy charity is discouraging the resale by taking the profit out of it. Second, we have always felt that a controlling factor in the consideration whether a damage clause is a penalty, is whether there would be an unjust enrichment to the receiver. Damages in a breach of contract should be for the purpose of compensation and not for punishment. Where the damages are punitive one of the parties is being "enriched" at the expense of the other. There is an indication of this principle in Kunkel & Jordan v. Wherry, 189 Pa. 198, where the court states (p. 201):

"The rule that in actions ex contractu, where the breach of an agreement admits of compensation, the recovery may be limited to the loss actually sustained, notwithstanding a stipulation for a penalty, is founded upon the principle that one party should not be allowed to profit by the default of the other, and that compensation and not forfeiture is the equitable rule."

The plaintiff is not profiting by these damages which are recoverable. A charity will profit. The intent of the agreement will be carried out. Plaintiff's reputation for dealing honestly with the consuming public will be sustained. People readily impute to a dealer the lack of scruples of the purchaser. Sustaining this agreement will prevent any such imputation to plaintiff.

The preliminary objections in the nature of a demurrer are overruled. Defendant has leave to file an answer on the merits within 15 days.