## Thomas B. Martindale, Inc., v. Dougherty

*Thomas F. Doran*, for plaintiff.
*Harold D. Saylor*, for defendant.

KNIGHT, P. J., June 1, 1949.—The complaint avers that plaintiff sold to defendant, on November 10, 1947, a new 1948 model Ford Sedan, for $1,801.83, and that contemporaneous with the sale, and as part of the consideration for the car, defendant signed an agreement not to sell that car, or transfer the title thereto, within six months of the date of the sale, without offering it to plaintiff, for $1,801.83, less depreciation of three percent per month.

The agreement provided that if defendant, purchaser, violated its terms, he "shall owe the said dealer

(plaintiff) the sum of Three hundred Dollars ($300.00) in current money of the United States, as liquidated damages, which amount shall be immediately due and payable, without notice."

In the answer defendant admits the purchase of the car and the signing of the agreement: and further admits that he sold and transferred the machine, on or about March 15, 1948, without having first offered it to plaintiff.

The answer further avers that defendant did not know the implications of the agreement, and did not knowingly agree to the terms thereof; and further, that the agreement was null and void because it is contrary to public policy and in restraint of trade, and that the sum of $300 named in the agreement as liquidated damages for its breach, is in fact a penalty and cannot be enforced.

Plaintiff now moves for judgment on the pleadings.

The answer does not aver that defendant signed the agreement because of any fraud, accident or mistake, and in the absence of such an averment, it is no legal defense for defendant to say that he did not know the implications of the agreement, and did not knowingly agree to its terms.

There is likewise no merit in the contention that the above agreement was in restraint of trade, and therefore contrary to public policy, hence null and void. All contracts in restraint of trade are not illegal.

If the restrictive clause is reasonable, having due regard to the time and the nature of the restriction, the courts have upheld them many times. Here, the subject of the restriction was an $1,800 automobile, the time only six months, and the restriction merely that before selling to anyone else, defendant had to offer the car to plaintiff, for its original selling price less depreciation figured at three percent per month.

Under the conditions existing in the motor vehicle market in the fall of 1947, we do not consider this an unreasonable restriction. In the fall of 1947 automobile dealers had to sell cars at the price listed by the manufacturer, but there was no ceiling on second-hand cars.

It was not uncommon in the hectic car market of those days for the purchasers of new automobiles to immediately sell them as second-hand cars, for a handsome profit. This was a matter of common knowledge. The agreement that defendant signed was designed to protect rather than injure the public, it protected the honest dealer, and no bona fide buyer of a new car for his own use should object to signing it.

This brings us to the third defense interposed by defendant, namely, that the $300 mentioned in the agreement was a penalty and not liquidated damages agreed upon by the parties.

In Holmes Electric Protective Co. v. Goldstein, 147 Pa. Superior Ct. 506, a case cited by counsel for both parties, it is said, on page 514:

" 'The question whether the amount stated in a conditional bond or contract is to be taken as a penalty or a liquidation of damages arising from a breach of the condition, is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction'."

The language of the contract is clear and unambiguous. In simple and easily understood language, it prohibits the purchaser of a new car from selling the same within six months without offering it to the dealer, on stipulated terms, and provides that if the purchaser violates the agreement, he will owe to the dealer the sum of $300 as liquidated damages.

In considering whether plaintiff could be injured by a breach of the agreement, and whether it would be difficult to measure the damage, we can do no better than to quote from the opinion of Judge Winnet of the Municipal Court of Philadelphia, in the case of Becker-Mills, Inc., v. Bosher, October term, 1948, no. 837, as follows:[1]

"That the plaintiff would be damaged by the resale in the used car market cannot be questioned. There is first of all the damage to the plaintiff's good will among its other customers. If the defendant has obtained a new automobile from the plaintiff which is being resold, there may be a justifiable suspicion against the plaintiff that he is not selling to legitimate customers. The manufacturer of automobiles may also regard the plaintiff with suspicion if the automobiles which are being delivered to him are reaching the 'gray' market. He may be suspected of a plot to avoid the requirements of franchise to sell at the advertised price. It may result in a cancellation of his franchise or a cut down of his allotment of automobiles. This is a serious damage, especially in a market where the demand is great. How could a jury, or a court, estimate the amount of this damage to the plaintiff? The courts should, therefore, welcome a stipulated amount as the damage in the event of a breach." [2]

To the above may be added the chance plaintiff would have of making a profit on the resale of the car.

---

[1] The quotation was taken from the brief of counsel for plaintiff.

[2] This case has since been reported at 68 D. & C. 115.

"Generally where the covenant is for the performance or the non-performance of a single act or of several acts, damages for the breach of which cannot be measured by any fixed standard, the sum named if reasonable in amount will be considered as liquidated damages": Emery v. Boyle, 200 Pa. 249, 253.

Taking into consideration the peculiar circumstances surrounding this contract: the state of the used car market, the restriction on dealers in reference to the sale of new cars, the price of the car, and the well-known fact that new cars were bringing at that time several hundred dollars more in the used car market than the price advertised for them by their manufacturers, we cannot say that the sum named in the contract, namely, $300, was unreasonable in amount.

There seem to be no appellate court decisions in Pennsylvania in which a contract similar to this, and made under like conditions, has been considered, but the appellate courts of Maine (Wade & Dunton, Inc., v. Gordon, 64 A.(2d) 422), and Illinois (Burnatt v. Nolen, 84 N.E.(2d) 155), have decided that the agreement is valid, and the sum stipulated in the contract liquidated damages, if reasonable.

Counsel for plaintiff, in his brief, has cited the following cases, in which lower courts of the Commonwealth have arrived at the same conclusions that we have in deciding this case. We have not examined these cases for they were not available: Becker-Mills v. Bosher, October term, 1948, no. 837, Municipal Court of Philadelphia; Martindale, Inc., v. Bamberger, June term, 1948, no. 464, Municipal Court of Philadelphia; Martindale v. Saitta, C. P. No. 1 of Philadelphia County, June term, 1948, no. 5014.

And now, June 1, 1949, the motion is allowed, and it is ordered and directed that judgment be entered by the prothonotary in favor of plaintiff, and against defendant for the sum of $300.