## Evans Equipment Corp. v. Borough of Sharpsville

*W. Allen Dill*, for plaintiff.

*William J. Joyce*, for defendant.

McKay, J., July 29, 1965. — This is an action in equity filed by plaintiff, a paving contractor, to require defendant borough to refund to plaintiff the major portion of a deposit paid in connection with the awarding of a bid for constructing and paving certain streets in the borough. The facts are stipulated as follows:

On or about December 1, 1962, under the Federal Public Works Acceleration Act, the borough was awarded a Federal grant for certain needed street construction and paving, and advertised for bids for the project. One of the conditions of the grant was that work on the project would be under way by April 1, 1963. Plaintiff corporation submitted a bid of $113,558 for the job and delivered to the borough its certified check for $5,677.90 as a guarantee that if its bid was accepted, it would, within 10 days of notice of such acceptance, execute a formal contract with the borough and furnish a satisfactory performance bond and laborer and materialmen's bond with a surety company as surety, as was required by the conditions of the Federal grant.

The bid form provided that the bid security attached in the sum of $5,671.90 was to become the property of the owner in the event the contract and bonds were not executed within the time above set forth "as liquidated damages for the delay and additional expense to the owner caused thereby".

Likewise, paragraph 7 of the information for bidders, one of the contract documents provides:

"The successful bidder, upon his failure or refusal to execute and deliver the contract and bonds required within 10 days after he has received notice of the acceptance of his bond, shall forfeit to the Owner, as liquidated damages for such failure or refusal, the security deposited with his bid."

The specifications applying to a contract security in paragraph 30 states:

"If at any time the Owner for justifiable cause, shall be or become dissatisfied with any surety or sureties then upon the Performance or Payment Bonds, the Contractor shall within five (5) days after notice from the Owner so to do, substitute an acceptable bond (or bonds) in such form and sum and signed by such other

surety or sureties as may be satisfactory to the Owner. The premiums on such bond shall be paid by the Contractor. No further payments shall be deemed due nor shall be made until the new surety or sureties shall have furnished such an acceptable bond to the Owner."

On or about March 4, 1963, plaintiff being the lowest bid, the contract was awarded to plaintiff and the following day it executed the contract.[1]

On March 15, 1963, plaintiff furnished to the borough a performance bond and a labor and materialmen's bond with the Stuyvesant Insurance Company as surety. The bonds were executed on behalf of the company by one Samuel Wesoky, presumably under a power of attorney which was attached to the bond. However, when the borough solicitor examined the power, it was discovered that Wesoky did not have authority to execute laborer and materialmen's bonds on behalf of the surety company at all, and on March 16, 1963, the borough solicitor notified plaintiff that the bonds were invalid.

Although the proper officer of plaintiff immediately contacted the bonding company and even went directly to its home office in Newark, N. J., in an effort to obtain valid bonds, because of the government requirements of certain certifications and proof of financial stability on behalf of the contractor on such a project, plaintiff was unable to obtain the required bonds in time for the borough to meet the April 1st deadline for commencement of the work. Accordingly, on March 19, 1963,[2] the

---

[1] The borough officers never executed the contract.

[2] Note that this is but three days after the borough solicitor notified plaintiff that the bonds were unsatisfactory. Paragraph 30 of the specifications provides that, "If at any time the Owner for justifiable cause shall be or become dissatisfied with any surety or sureties then upon the performance or payment bonds, the contractor shall within *five (5) days* after notice from the owner so to do, substitute an acceptable bond". It is possible that the borough's

borough council passed a resolution voiding the award and forfeiting plaintiff's certified check as liquidated damages, and, one week later, it awarded the contract for the project to the next lowest responsible bidder in the amount of $124,045.50, as was its right.

At about the same time, plaintiff had a similar contract with the city of Struthers, Ohio, under the same Federal Public Works Acceleration Act to remove an existing bridge and build a new one, which involved approximately the same amount as the Sharpsville job, and for which it had furnished similar bonds, executed on behalf of the Stuyvesant Insurance Company by Wesoky. When the invalidity of the Sharpsville bond was discovered, plaintiff was able, apparently without difficulty, to replace the invalid bonds on the Struthers job with valid ones.[3] The Stuyvesant Insurance Company has since obtained an injunction in the United States District Court for the Western District of Pennsylvania, enjoining Wesoky from writing any further bonds on its behalf.

The borough council has since authorized by resolution the return to plaintiff of $5,427.90 of the sum forfeited, being the original amount, less the actual cost of the administrative work and expenses incurred by the borough in the rewarding of the contract, $250, conditioned upon a determination by the court that it may legally make such refund.

Accordingly, the question before the court in the present case is whether, under the circumstances, the borough has the authority to return that portion of the proceeds of the deposit to plaintiff.

----

action in declaring the award of contract void and forfeiting the deposit was premature and may alone be sufficient to support the plaintiff's claim for return of its deposit. However, we prefer to rest our decision upon broader grounds.

[3] Apparently, the pressure of a time limit was not present in the Struthers case.

At first glance, it might appear that the borough had no legal right to make the refund. A municipality may not give away its money, and in this case, as we have noted, the documents expressly stated that the bid security was to become the property of the owner (borough) as liquidated damages for the delay and additional expense to the owner caused thereby, in the event the contract and bonds were not executed within 10 days after notice of acceptance of the bidders.

If, therefore, the deposit, as the language in the documents seems to say, is liquidated damages for delay and additional expenses to the owner, the borough cannot refund it.

On the other hand, if instead of being liquidated damages for delay and expense, the retention by the borough would amount to a forfeiture, the borough has the power to refund it, provided that the circumstances are such as to reasonably warrant it.

The Borough Code [4] provides that "The council of the borough shall have power: II. To mitigate or remit fines and forfeitures in reasonable cases". Hence, this case hangs upon the question whether the retention of the balance of the deposit [5] by the borough would be a forfeiture or merely retaining liquidated damages.

A forfeiture is defined as "A thing forfeited; that which is lost by a crime, offense, neglect of duty, or breach of contract; hence, a fine; a penalty": Webster's New Collegiate Dictionary. So considered, for the borough to retain the deposit in this case would mean that plaintiff had breached a condition of the bidding and, hence, *forfeited* the deposit.

Is the deposit liquidated damages or a forfeiture? If

---

[4] Act of May 4, 1927, P. L. 519, as amended, 53 PS §46005.

[5] It is stipulated that $250 of the deposit represents a reasonable charge for the administrative cost and expense incident to reawarding the contract.

we look beyond the language of the bidding documents and inquire whether, in reality, the retention is, in fact, liquidated damages for the delay and additional expense to the owner caused by the failure to deliver valid surety bonds on time, we are confronted with the fact that, although the deposit was $5,677.90, the actual stipulated expense incurred by the borough was only $250. Apart from this relatively negligible expense for administrative expense and reawarding the contract, the borough was in exactly the same financial situation after the breach of the condition as if plaintiff had never submitted a bid in the first place.

Accordingly, although the contract papers as prepared by the Federal Government use the words "liquidated damages" when referring to the failure to furnish valid bonds in time, it is obvious that, under the circumstances of this case, there is no reasonable relation whatever between the amount of the expenses or damages actually sustained and the balance of the deposit withheld.

It follows that for the borough to retain the large sum involved in this deposit in reality would not be compensation for damages at all, but obviously an out and out forfeiture of plaintiff's funds, and the fact that the government forms call it "liquidated damages" would not make it so.

In determining whether a lump sum named by the parties in advance for damages is liquidated damages or a penalty, and, hence, a forfeiture, the controlling elements are the intent of the parties and the special circumstances of the case, and not the name used by the parties: Holmes Electric Protective Company of Philadelphia v. Goldstein, 147 Pa. Superior Ct. 506. Where a lump sum is named, the presumption is that it is a penalty, rather than liquidated damages: Keck v. Bieber, 148 Pa. 645. In considering whether a contract clause calls for a penalty or for liquidated dam-

ages, the name by which such a clause is called is of but slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case: Laughlin v. Baltalden, Inc., 191 Pa. Superior Ct. 611.

A court of equity has jurisdiction to prevent a forfeiture. In general, equity abhors either a penalty or a forfeiture and will relieve against it in all cases where a hardship would result: Blue Ridge Metal Manufacturing Company v. Proctor, 327 Pa. 424, 428. The forfeiture which equity abhors is one which works a loss contrary to equity: Warfield v. Kelly, 262 Pa. 482, 491. The sole remaining question, then, is whether plaintiff is at fault in any way so that it is not entitled to the equitable relief asked.

There can be no question that plaintiff had the financial standing to obtain valid bonds, for it demonstrated its ability to obtain similar security in the Struthers situation which was comparable to the Sharpsville case.

Further, plaintiff acted immediately upon being notified that the power of attorney was defective, did all that it could to supply valid substituted bonds so that the contract could be executed by the borough and the work proceeded with. The only reason why it failed to do so was the April 1st deadline set for commencing the work.

We are unable to find a single fact in this record which places any responsibility upon plaintiff for its failure to supply the bonds on time. Wesoky was not the agent of plaintiff and his ultra vires execution of the bonds on behalf of the surety company could not be attributable to plaintiff.

The sole act for which plaintiff might be held to be responsible in this whole situation is its possible negligence in failing to detect the defect in the bonds before offering them to the borough, but it is understandable

that a contractor would assume that bonds which were *valid on their face* were supported by a proper power of attorney and would not scrutinize the detailed wording of the power with the same exactness as the borough solicitor would. Finally, the borough itself has recognized the injustice of its retaining plaintiff's money by passing the resolution authorizing its return. There is not the slightest evidence of any bad faith on plaintiff's part.

Accordingly, it is our opinion that the amount of the deposit over and above the actual cost and expense to the borough should be refunded to plaintiff.

### CONCLUSIONS OF LAW

1. The error in the power of attorney attached to the bonds and the consequent delay in furnishing valid bonds were errors for which plaintiff was not responsible.

2. To permit the borough to retain the deposit over and above the amount of the expense incurred would amount to an inequitable forfeiture of plaintiff's funds.

3. The court should not permit the forfeiture, but should order the refund of the deposit, without interest, less $250 to cover the administrative costs and expenses incident to reawarding the contract.

### DECREE NISI

Now, July 29, 1965, it is ordered that defendant, the Borough of Sharpsville, refund to plaintiff the sum of $5,427.90, without interest, that representing the amount of the deposit accompanying plaintiff's bid, less the actual cost of administration and expenses of reawarding the bid for the contract. The costs shall be borne by plaintiff.

It is further ordered that unless exceptions are filed to this decree nisi within 20 days from the notice hereof, the same shall be entered as the final decree of the court.